In the Matter of the Application of CLYDE INGAMELLS, Petitioner, Respondent, to Compel the BOARD OF ELECTIONS OF OSWEGO COUNTY, NEW YORK, Respondent, to Call and Provide for a New Election, etc., Pursuant to Section 330 of the Election Law of the State of New York.

CHARLES D. WILCOX, Intervenor, Appellant.

In the Matter of the Application of CHARLES D. WILCOX, Petitioner, Appellant, for an Order under Article 78 of the Civil Practice Act against HOLLAND J. SMITH and Others, as Supervisors, etc., and Others, Respondents.

CLYDE INGAMELLS, Intervenor, Respondent.

Fourth Department, March 6, 1940.

*Fannin & Fannin* [*James C. Fannin* of counsel], for the appellant, Charles D. Wilcox.

*Maurice B. Conley*, for the respondent, Clyde Ingamells.

*William M. Gallagher, County Attorney*, for the board of elections, the board of supervisors and the board of county canvassers, respondents.

TAYLOR, J. At the general election on November 7, 1939, Charles D. Wilcox and Clyde Ingamells were opposing candidates for the office of supervisor of the supervisor district comprising the second and third wards in the city of Fulton, Oswego county. The returns, which the board of elections delivered to the county board of canvassers, credited Wilcox with 1,067 votes and Ingamells with 1,052 votes, or a plurality for Wilcox of fifteen votes. A dis-

crepancy appeared on the return from voting machine No. 7909 which was one of the two machines used in the second district of the third ward. This machine registered 267 on the public and protective counters but the compartment counters for supervisor registered 165 for Wilcox and 122 for Ingamells, or a total of 287, thus evidencing that twenty excess ballots had been recorded, by the machine, for that office. The official canvassing board recanvassed the vote cast thereon and found that the canvass of the returns, which was made by the board of elections pursuant to section 273-a of the Election Law, had been correctly made from the machine and that the discrepancy still remained unaccounted for. The machine was then examined and tested in accordance with section 266 of the Election Law and was found to perfectly record the test vote for the office of supervisor. The canvassing board completed its canvass of the returns for all offices except that of supervisor of the second and third wards; as to this office, it stated upon its canvass sheet that the recorded vote for supervisor was twenty more than actually voted on machine No. 7909, according to the public counter, and that " It is therefore impossible to determine from the returns who received the greatest number of votes cast for this office." Wilcox thereafter demanded that the canvassing board make, sign and file, in the office of the board of elections, its written determination that he had, by the greater number of votes, been elected to this office, which demand was refused.

On November twenty-seventh and twenty-eighth two separate proceedings were instituted, one by Ingamells for relief under section 330 of the Election Law, and the other by Wilcox under article 78 of the Civil Practice Act for an order directing the canvassing board to reconvene and declare him to be elected upon the basis of its canvass. The proceedings were heard together at Special Term and the court made a final order in each proceeding. The proceeding commenced by Wilcox was dismissed and his application denied. In the proceeding commenced by Ingamells, the court ordered the canvassing board to reconvene, to recanvass the votes for supervisor in the second and third wards of the city of Fulton, and to correct the canvass by eliminating therefrom all votes cast for supervisor on machine No. 7909. Wilcox appeals from both of these final orders.

The first question here to be determined is whether section 330 of the Election Law authorizes the court to direct that a canvassing board eliminate from its canvass and disregard the entire vote that has been recorded for an office upon a voting machine when a discrepancy, between the figures on the compartment

counters and on the public counter, indicates that the machine has recorded unidentifiable ballots that were not cast by electors. The court, under this section, has jurisdiction to determine any questions of law or fact arising as to protested, wholly blank or void ballots shown on the statement of canvass in any election district and to direct a recanvass of such ballots (subd. 4) and to determine any questions of law or fact arising as to the canvass of returns by a canvassing board and to direct a recanvass of the returns or the performance of any duty imposed by the law upon such canvassing board (subd. 5).

The twenty ballots which appear, by the public and protective counters on this machine, not to have been cast thereon but which appear to have been registered upon the compartment counters for the office of supervisor, may be classified either as void ballots or as excess ballots. An inspection and examination of this machine failed to disclose to which candidate they were credited by the machine. If they be regarded as void ballots that have been counted and are reflected in the returns, they cannot be identified and segregated so as to permit their deduction from the total number of votes. If they be regarded as excess ballots, the procedure that is applicable to excess paper ballots (§ 215) cannot be followed. The fact that the compartment counters of a machine have not been set at zero must be discovered and remedied — or a certificate made thereof — prior to the opening of the polls and before the machine is unlocked and operated for voting (§ 256), otherwise a situation is presented to which the statutory provisions, in respect to excess and void paper ballots, are inapplicable. I believe that a summary proceeding, pursuant to section 330 of the Election Law, affords no corrective remedy if an examination and test of the machine reveal no mechanical defect in the machine and if the void or excess ballots cannot be traced to those which are registered for a particular candidate. Since affidavits by, or testimony of, electors may not be used (*Matter of Hogan* v. *Supreme Court*, 281 N. Y. 572), the remedy of a candidate, who deems himself aggrieved by such a discrepancy shown on the canvass from the machine, is by an action to test the title to the office.

In *Matter of Creedon* (264 N. Y. 40), all ballots recorded for the office of assessor on three improperly-adjusted machines were rejected from the canvass and the successful candidate determined from the remaining ballots cast. Judge LEHMAN, now Chief Judge, in the opinion for the court, pointed out that an analysis of the poll demonstrated beyond any reasonable doubt that a plurality of electors in the entire city cast their ballots for the candidate who received the greatest number of votes in the remaining dis-

tricts, and said: " In such circumstances the Appellate Division correctly gave the will of the majority effect. The question would have been different if the effect of rejecting all the votes recorded on the three defective machines might have been the election of a candidate who did not receive a plurality of the votes."

In the case at bar, the rejection of all ballots cast for supervisor on machine No. 7909 might, and probably would, result in the granting of a certificate of election to the candidate who did not receive a plurality of the votes.

In *Matter of Hogan* (281 N. Y. 572) the court said: " The question of the construction of section 330 was not raised or considered in *Matter of Creedon* (264 N. Y. 40). Any extension of the summary remedy authorized by that section must be made by the Legislature."

In view of the foregoing considerations, I am of the opinion that the final order, directing that the canvassing board reject the return from machine No. 7909, cannot be sustained.

The second question concerns the duty of a canvassing board, when the canvass of votes from a voting machine discloses that excess ballots are registered thereon which are sufficient in number to change the final result. Must the board count the votes as written upon the returns containing the statements of canvass which the board of elections delivers to it, make the necessary computation therefrom, and determine from such computation only, the elected candidate? Or may it refuse to make such computation and determination if returns disclose that excess ballots are included in the total registered vote for any office? The duties of the board, which are specifically defined by statute, require that it tabulate all the votes shown on the several election district statements of canvass before it, that it make computations therefrom, and that it, upon the basis of its computations, determine the elected candidate. (Election Law, §§ 274, 275.) While the board may cause election officers to correct clerical mistakes and omissions upon their statements of canvass, such officers shall not alter any decision theretofore made by them. (Election Law, § 273.) Where a discrepancy appears in the returns of any election district, the board may recanvass the vote from the machine used in that district and may examine and test the same if, upon its recanvass, the original canvass of the returns therefrom is found to have been correctly made and if the discrepancy still remains unaccounted for. " However, nothing contained in this section (266) shall authorize any change in the returns filed by inspectors of election in any election district nor authorize any board of canvassers in any wise to consider or act upon any recanvass of votes made pursuant thereto." (Election Law, § 266.)

A canvassing board is without judicial or quasi-judicial powers; it serves only in a ministerial capacity and must count the votes shown on the returns before it, make the necessary computation therefrom, and thereupon determine which candidate has, by the greatest number of votes, been elected to the office. (*People ex rel. Derby* v. *Rice,* 129 N. Y. 461, 466; *Matter of Smith* v. *Wenzel,* 216 id. 421; *Matter of Bonacker,* 254 App. Div. 801, 802; *Matter of Carson,* 164 Misc. 945, 950; affd., 254 App. Div. 801.)

I am of the opinion that the applicable provisions of the Election Law, and the cited authorities, require a reversal of the final order dismissing the proceeding commenced by Wilcox, and the granting of an order in accordance with the prayer of his petition.

The final orders appealed from should be reversed on the law, without costs, and an order granted directing that the county board of canvassers reconvene on March 18, 1940, and complete its canvass in accordance with the requirements of sections 274 and 275 of the Election Law.

In the first proceeding: All concur, except CROSBY, P. J., and DOWLING, J., who dissent and vote for affirmance on the authority of *Matter of Creedon* (264 N. Y. 40). Present — CROSBY, P. J., TAYLOR, DOWLING, HARRIS and McCURN, JJ.

Final order reversed on the law, without costs of this appeal to any party, and order granted directing the board of canvassers of Oswego county to reconvene on March 18, 1940, and complete its canvass in accordance with the requirements of sections 274 and 275 of the Election Law.

In the second proceeding: Same decision as in companion case last above. Present — CROSBY, P. J., TAYLOR, DOWLING, HARRIS and McCURN, JJ.