In the Matter of CHARLES E. RICE, Appellant-Respondent, *v.* JAMES M. POWER et al., Constituting the Board of Elections of the City of New York, et al., and ALFRED E. SANTANGELO, Respondent-Appellant.

First Department, April 4, 1967.

*James J. Leff* for appellant-respondent.

*Joseph Cohen* for respondent-appellant.

TILZER, J. In view of the immediate action required in the preparation of this opinion and to expedite a final resolution of the matter, we refer to the minority opinion for the nature and background of the proceeding.

Upon recanvass it was found that a discrepancy existed between the original canvass of returns from machine No. 83867 (the second machine) in the 54th Election District of the 83d Assembly District and the recanvass by the Board of Elections. The board nevertheless failed to take the enumerated steps to account for the discrepancy and, as the Referee found, failed to establish the true cause of the discrepancy in the returns from such machine (Election Law, § 274, subd. 3). The court, consonant with and in obedience to a liberal construction of the statute vesting it with jurisdiction '' to summarily determine any question of law or fact arising as to * * * The canvass of returns '' (Election Law, § 330, subd. 5), determined that the credible evidence clearly established that the machine had 16 votes for Rice at the conclusion of voting. The fact that the recanvass indicated 26 votes for Rice, the Referee speculated, might have been due to the absence of a significant protective device on this machine. We too might conjecture, removing from consideration any suspicion of fraud, that the change was due to a failure to safely transport the voting machine from the polling place. In default of proof as to the true cause of the discrepancy, nevertheless, the Referee found that the documentary proof as well as the testimony of the four Inspectors (including the two Republicans), established that the machine had tallied 16 votes for the petitioner Rice. In the circumstances the Referee correctly concluded that the ultimate figure erroneously computed upon the *recanvass* whereby the total of Rice's votes of 34 on machine No. 1 and 26 on machine No. 2 was shown as '' 50,'' must stand. In other words, giving to Rice 34 votes on machine No. 1 and the 16 votes which the unrefuted testimony and documentary proof established as Rice's vote on machine No. 2, the correct total was 50.

Despite the language of section 330 that the court's jurisdiction of any question of law or fact with reference to the canvass

of returns shall be construed liberally, the minority would confine jurisdiction where a discrepancy occurs upon recanvass to a mere clerical variance or mistake and would hold the recanvass sacrosanct. Unlike *Matter of Hogan* v. *Supreme Court* (281 N. Y. 572) relied upon by the dissenters, where the proceeding was brought pursuant to subdivision 4 of section 330 of the Election Law, we are here concerned with subdivision 5 of that section. To limit the court's jurisdiction under subdivision 5 to ascertainment of a correct transfer of figures from canvass to recanvass would be contrary to the broadened power of the Board of Elections and the concomitant power of the court to review the recanvass and make such order as justice may require (Election Law, §§ 274, 330; *Matter of O'Shaughnessy* v. *Board of Elections*, 15 A D 2d 183). And, if upon a recanvass a discrepancy might require the Board of Elections to examine the voting machine (§ 274, subd. 3), is it not incumbent upon the board where the canvass records two military paper ballots to determine why the recanvass reveals but one? A candidate credited with two military ballots by the inspectors' and police department's canvasses may not be deprived of one such vote because an election official misplaced one of such ballots. A recanvass may supersede an incorrect canvass, but a " discrepancy " in the recanvass itself is not sacred and outside the pale of judicial review.

Reference has been made in the dissenting opinion to the public counter and protective counter tallies. The first of these, as the minority note, records the total number of votes cast on a particular machine. Both of these counters are activated by the voter pulling a lever on the machine. The fact that the tallies appearing on these counters did not change from the close of the voting to the recanvass does not explain the discrepancy in the vote for the petitioner Rice between the inspectors' canvass and the recanvass. The word " discrepancy " as part of the Election Law applicable to voting machines has been in existence for some 60 years. The design of the Legislature in enacting the predecessor of section 274 " was to furnish a method for the correction of errors in election returns in voting machine districts sufficient to cover all such errors susceptible of correction and that the word ' discrepancy ' was not used in a narrow sense but in such a sense as to justify certainly as much relief in cases of errors in voting machine districts as has been afforded for nearly seventy-five years in cases of errors in districts where there has been voting by ballot." (*Matter of Smith* v. *Board of Canvassers*, 92 Misc. 607, 612 [1915].) The defect in the returns as to machine

No. 83867, whether due to mechanical or human failure, was subject to correction upon the testimony of all four Inspectors that 16 votes were recorded on this machine. Not only the Inspectors, but the candidates' Watchers as well as a police officer were present when these 16 votes were called off from this machine. Thus at least seven persons, including Inspectors and Watchers from the petitioner's own party, attest to the fact that the Rice vote tallied from machine No. 83867 was 16 votes. The conclusions of the Referee are amply supported by the evidence and his report was properly confirmed by the Special Term.

The judgment appealed from should be affirmed, without costs or disbursements.

CAPOZZOLI, J. (concurring in the result). I concur in the result reached by the majority for the reason that the judgment confirming the report of the Special Referee and dismissing the proceeding brought under section 330 of the Election Law, which is appealed from, was based on the specific finding of the Referee that: " the documentary proof adduced before me, including the inspectors' canvass (referred to on the hearings as the ' green sheets '), . . . *as well as the canvass sheet purportedly prepared by the policeman on duty at the polling place for the 54th Election District of the 83rd Assembly District, all show that the Rice vote they tallied at the polling place from machine #83867, the second voting machine, was sixteen (16) votes.*" (Emphasis in original.) The Referee in his report further stated as follows: " There was no explanation at the hearings as to how this figure came to be changed to twenty-six (26), as indicated on the machine at the inspection conducted by me (supra). It is significant, however, that *all* of the inspectors who were called by respondent as witnesses before me, including the Republican inspectors, testified that sixteen (16) votes were called off this machine by a watcher and tallied by each of them. They stated that both candidates had election ' watchers ' present at this canvass ". (Emphasis in original.)

McNALLY, J. (dissenting). The general election of November 8, 1966, included a contest for three delegates to the Constitutional Convention to represent the 33d Senate District, Bronx County. Two candidates received decisive pluralities. At issue is the third delegate's seat.

An anticipatory proceeding was brought by appellant under section 330 of the Election Law. On the return day of the order to show cause, Special Term dismissed the proceeding on consti-

tional grounds. The Court of Appeals reversed (19 N Y 2d 106), and remitted the case for further proceedings. Special Term appointed a Special Referee to hear and report facts with regard to the canvass and recanvass. An appeal was taken from the order of reference, and this court modified the order (27 A D 2d 817) to include the final canvass of any election district wherein it is alleged that the voting machine figures were incorrectly copied or totaled.

The machine votes in the 54th Election District of the 83d Assembly District were recorded on two machines. One of them is identified by No. 83867. Its protective counter tallied 375, which represented the total votes cast on said machine during, on and prior to November 8, 1966. (Election Law, § 266, subd. 6.) Its public counter showed 306, which represented the total of votes on said machine cast at the general election on November 8, 1966. The protective counter and public counter tallies were identical on November 8, 1966, on the canvass of the Inspectors of Election for the district, on the recanvass by the Board of Elections, and upon the examination of the voting machine by the Special Referee in the course of this proceeding. The Inspectors' report of canvass on November 8, 1966, recorded 16 votes for petitioner Rice on Row D. The recanvass disclosed 26 votes thereon for petitioner Rice. The machine tally for Row D on recanvass and upon inspection of the Special Referee showed 26 votes. The Referee found: '' There was no explanation at the hearings as to how this figure came to be changed to twenty-six (26), as indicated on the machine at the inspection conducted by me.'' On the basis of the testimony of the Inspectors of Election of the said election district, the Special Referee found (1) the Row D tally for petitioner Rice on November 8, 1966, was 16, (2) that the said machine figure changed prior to the recanvass and his examination of it, (3) that the cause of the change is unknown, and (4) that the Row D tally of the machine on November 8, 1966, may be established by testimony at variance with it.

Section 255 of the Election Law requires the Inspectors to verify and record the protective counter and to verify that all counters for the election to be conducted register zero. Section 261 of the Election Law requires the Inspectors to lock the voting machines as soon as the polls are closed, to register the numbers shown on the protective counters, the public counters and the counter compartments. The voting machines are required to remain locked for a period of no less than 30 days after the election. (Election Law, § 263.) The keys to the voting machines are required to be kept '' securely locked by

the official having them in charge " at all times after the election. (Election Law, § 264.)

The Board of Elections is required to recanvass each machine vote on notice to interested parties. "If, upon such recanvass, it shall be *found* that the original canvass of the returns has been incorrectly made from any machine or machines * * * the result of the recanvass * * * shall be filed with the board of elections. Such recanvass of votes made pursuant hereto shall thereupon supersede the returns filed by the inspectors of election of the election district in which the canvass was made." (Election Law, § 274, subd. 2; italics added.) If there be "a discrepancy * * * unaccounted for, the board of elections * * * shall unlock the voting and counting mechanism of the machine and shall proceed to thoroughly examine and test the machine to determine and reveal the true cause or causes, if any, of the discrepancy in the returns from such machine. * * * After the completion of such examination and test, the custodian shall then and there prepare a statement in writing giving in detail the result thereof, and such statement * * * shall be filed in the office of the board of elections." (Election Law, § 274, subd. 3.)

The provisions of subdivision 3 of section 274 have no application. Where the word "discrepancy" occurs in subdivision 3 it does not mean a variance between the return of the Inspectors and the recanvass made by the Board of Elections. This is apparent from the fact that the recanvass by the Board of Elections is the official tally. Whether it agrees or disagrees with the return of the Inspectors is of no moment. What is meant by a discrepancy is a situation where the vote for any particular candidate cannot be reconciled with the balance of the returns on the machine, as, for instance, where the public counter shows 100 votes and the compartment tally 150 votes. The discrepancy has reference to the machine and its internal operation. It is this discrepancy which must be explained by the Board of Elections and explored by a mechanical examination and test of the machine as provided for, and beyond that subdivision 3 has no application.

The summary jurisdiction vested in the Supreme Court is wholly statutory. (*Matter of Hogan* v. *Supreme Court*, 281 N. Y. 572.) In that case, a voting machine failed to register the true number of votes cast for a candidate named on the machine because of a defect in the mechanism. The proceeding was brought pursuant to subdivision 4 of section 330 of the Election Law to ascertain by oral testimony the number of votes cast but untabulated on the ground that each time the

defective machine failed to register a vote the total was a ballot wholly blank. The Court of Appeals rejected the argument, holding that the proceeding did not come within subdivision 4 of section 330, and that the court, therefore, could not receive testimony of electors to establish the number of votes cast for a candidate whose name appeared on the defective machine, and emphasized the narrow limitation of the judicial power conferred by statute. The court stated (p. 576) that any extension of the summary remedy authorized by that section must be made by the Legislature. (See, also, *Matter of Mullen* v. *Heffernan*, 193 Misc. 334, affd. 274 App. Div. 972, affd. 298 N. Y. 785; *Matter of Bonacker* v. *Clark*, 254 App. Div. 801; *Matter of Ingamells* v. *Board of Elections*, 259 App. Div. 36; *Matter of Lester* v. *Gruner*, 205 Misc. 67.)

Subdivision 5 of section 330 of the Election Law provides for summary jurisdiction of the canvass of returns and enables a recanvass " or the correction of an error or the performance of any duty imposed by law ". No error or omission on the part of the Board of Elections appears. Its canvass reflected the compartment tally on Row D as shown on the machine, which coincides with the total revealed on its examination by the Special Referee. The protective and public counters at all relevant times were unchanged. No " discrepancy " was found on recanvass (Election Law, § 274, subd. 3). No statutory examination and test of the machine was made or required to be made. In the absence of the statutory test or examination, there is no legal basis for reliance upon a defect within the machine. Hence, the recanvass of the voting machines in the 54th Election District of the 83d Assembly District may not be disturbed.

The Special Referee accorded one additional vote to the respondent Santangelo in the 79th Election District of the 85th Assembly District. Testimony was adduced upon which the Special Referee concluded a vote was cast for said respondent by a military ballot allegedly misplaced and not evidenced by any ballot on the recanvass and not discovered at the time of the hearing. There is no authority in a summary proceeding under section 330 of the Election Law to tally a vote unsupported by a ballot. Moreover, there is no error of omission or commission on the recanvass in respect of the purported absent military ballot which is a basis for summary jurisdiction under subdivision 5 of section 330 of the Election Law.

The Special Referee also accorded one additional vote to the respondent Santangelo in the 26th Election District of the 80th Assembly District. The recanvass of absentee ballots in that

election district established one vote for respondent Santangelo. There were two absentee ballots; one was torn and the other tallied for Santangelo. Testimony before the Special Referee was to the effect that one absentee and one military ballot were cast and tallied by the inspectors. No military ballot appeared on the recanvass, and no such ballot was produced at the hearing. For the reasons stated in regard to the absent military ballot in the 79th Election District of the 85th Assembly District, the vote based on the alleged missing military ballot in the 26th Election District of the 80th Assembly District may not be counted for the respondent Santangelo.

The recanvass established 45,281 votes for petitioner Rice and 45,289 votes for respondent Santangelo. A mathematical error appears in the addition of the Row D votes on the two machines in the 54th Election District of the 83d Assembly District. This total should be 60 instead of 50. The total vote for petitioner is, therefore, 45,291. The Santangelo vote remains at 45,289, as established by the recanvass.

The judgment appealed from should be reversed, the certificate of election of respondent Santangelo should be cancelled, and petitioner's election certified.

McGIVERN, J., concurs with TILZER, J.; CAPOZZOLI, J., concurs in result in opinion; McNALLY, J., dissents in opinion in which STEUER, J. P., concurs.

Judgment affirmed, without costs or disbursements.