OPINION OF THE COURT
Edward M. Horey, J.
The action before the court is one in quo warranto. It has *817 been brought by the Honorable Robert Abrams, Attorney-General of the State of New York, on the relation of one James Ellis, a candidate for the office of councilman. The statutory authority for the action is section 63-b of the Executive Law. The action concerns a general election which was conducted in the Town of East Otto, Cattaraugus County, in November 1985. At the conclusion of that election the Democratic candidate, Ivan Eaton, was declared the victor over his Republican opponent, the plaintiff, James Ellis.
The evidence is that the results of the election as certified by the Election Commissioners was as follows as it related to the offices of councilman.
Absentee
Ballots
Voting Machine Row Votes By Absentee Ballots To Total
Candidate and Votes on Paper to Board of Election Votes
Party Affiliation Machine Ballot Election Officials Cast
11A
John H. Whitrock
Democrat 87 2 1 4 94
12A
Ivan M. Eaton,
Democrat 109 4 2 4 119
11B
James Ellis,
Republican 38 7 1 8 54
12B
Martin W. Westfall,
Republican 211 8 8 227
After the election and pursuant to an order of the Supreme Court, the Election Commissioners recanvassed the vote by unlocking the voting machine and counting mechanisms and proceeded to again examine the counters and test the machine.
In testing the machine the Election Commissioners, in the presence of several observers, voted 100 ballots on the voting machine for the office of councilman. The voting machine correctly recorded the voting for candidates John A. Whitrock on line 11 A, for Ivan M. Eaton on line 12A and Martin W. Westfall on line 12B. The voting machine however did not record 100 votes for James Ellis on line 11B. Of the 100 test votes cast for James Ellis only 16 were recorded on the machine for him, his total increasing from the recorded 38 votes to 54 votes. Eighty-six of the test votes cast for James Ellis were not recorded.
As a result of an examination of the voting machine by a *818 representative of the manufacturer it was determined that a part of the mechanism which operated row 11B (James Ellis) known as a pinion had a broken part sometimes referred to as a flange and other times as a gear. The same factory representatives testified that such a broken pinion would cause the machine to miscount either by failing altogether to record votes cast or recording only part of such votes. However, the malfunction would not erase or eliminate votes which had been cast. The effect of the broken pinion was demonstrated by the factory representative as a part of the proof of the Attorney-General upon trial.
This court finds as a fact that the voting machine malfunctioned in its recording of the votes cast for James Ellis, the candidate for councilman on row 11B at the time of the recanvass.
This court finds as a fact that the voting machine malfunctioned as a consequence of a broken flange on the pinion which operated row 11B wherein James Ellis was the candidate.
The court finds as a consequence of the malfunctioning of the machine only part of the votes cast for James Ellis for councilman were recorded.
The court finds that there was no malfunctioning of the voting machine in reference to rows 11 A, 12A and 12B and as a consequence the votes recorded on the machine for candidates John A. Whitrock, Ivan M. Eaton and Martin W. West-fall, respectively, were correct.
The court finds that at least 147 votes were duly cast on the voting machine for James Ellis for councilman on row 11B and that the recorded vote of 38 thereon was in error.
The court finds that the voting machine was malfunctioning in its operation of row 11B during the period of voting in the election in issue.
The court finds that the two candidates who received the greatest number of votes for councilman were Martin W. Westfall with a total of 227 votes and the plaintiff James Ellis with a total of 163.
The last three factual findings which have been made together with the great variances in votes cast for the Republican candidate Martin Westfall on the voting machine, viz., 211, from that of his Republican running mate James Ellis, viz., 38, permits the inference that James Ellis received more votes than the Democratic candidate Ivan Eaton. This conclu *819 sion is further supported by the overwhelming percentage of voters in the Town of East Otto who were registered Republican in 1985, to wit, 304, as compared to the number of registered Democrats, viz., 150, of which this court takes judicial notice. Such overwhelming Republican registration caused one attorney to quip on argument that the principal question concerning the election in issue was who was the more surprised, the Democratic candidate, Eaton, when declared the winner or the Republican candidate, Ellis, when declared the loser. It was stated in Matter of Creedon (264 NY 40, 43-44, affg 239 App Div 592 [4th Dept 1933]) that while a court may not act on conjecture it may "act on logical inferences based on human probabilities” in analyzing the facts attending an election.
Turning now to the applicable law, emphasis must be given to the fact that the instant proceeding is brought by the Attorney-General of the State of New York as a quo warranto proceeding under the authority of section 63-b of the Executive Law. It is not brought by an individual under provisions of the Election Law, e.g., section 16-100 (formerly § 330) or any other statute. Under decided precedent this difference in procedural origin appears to be critical and decisive of the issues presented.
The first question and the one most vigorously argued concerns the admissibility of evidence of the electors as to how they voted. May this court properly receive and credit the affidavits of 147 electors that they cast their vote on the voting machine for the plaintiff James Ellis?
The answer to the first question posed is a positive and unequivocal affirmative. That was the decision reached in People ex rel. Deister v Wintermute (194 NY 99 [1909, Cullen, Ch. J.]). In reaching its decision the Court of Appeals there made an extensive review of prior decisional law, viz., People ex rel. Yates v Ferguson (8 Cow 102), People v Cook (8 NY 67), People ex rel. Smith v Pease (27 NY 45) and People ex rel. Judson v Thacher (55 NY 525), and cited all of the noted cases as authority for the proposition that testimony of voters as to how they voted was competent evidence. It was stated that such was the settled law of this State in quo warranto proceedings and criminal prosecutions of election officials: "Since the Thacher case, thirty-five years ago, the doctrine of the Pease case has never been questioned. It has been accepted as the settled law of the state, not only in quo warranto proceedings, but in criminal prosecutions against election officers, and *820 such officers have been convicted and punished on the strength of such testimony.” (People ex rel. Deister v Wintermute, 194 NY 99, 105, supra.)
The basis of the rule was set forth cogently and with persuasive simplicity, to wit: " 'The right to examine voters in an action in the nature of a quo warranto is in affirmance and vindication of the essential principle of the elective system, that the will of the majority of the qualified electors shall determine the right to an elective office’.” (194 NY 99, 105, supra.)
In People ex rel. Deister v Wintermute (supra), our highest court held that any procedural device which fails to give effect to a vote cast is plainly unconstitutional. "The right of the elector to vote is conferred by the Constitution, and whenever he exercises that right in conformity with the methods prescribed by law he is entitled to see that his vote has been given full force and effect in the determination of what persons have been elected to office. True, he may be unable, either by negligence on his own part or by personal misfortune, to exercise that right, but any method of holding an election which would deprive the electors free from fault or personal misfortune of the right of casting their ballots and having effect given to the votes so cast would plainly be unconstitutional” (194 NY 99, 108, supra).
This court does credit the sworn statements of the 147 voters that they and each of them cast their vote for the plaintiff James Ellis. There is not even a suggestion that the failure of the voting machine to record their votes was a result of any negligent conduct on their part. The court finds that failure of having their votes recorded was the consequence of a mechanical failure of the election machine.
This court finds it to be the law of this State that acts of the 147 voters are not to be regarded as merely abortive attempts to vote but rather complete and valid votes for the candidate of their choice, viz., James Ellis.
This court does not accept the validity of the argument that crediting the votes of the voters who cast their ballot for James Ellis will establish a precedence which will cause "great inconvenience” and a "large consumption of time” and thus should not be credited. The alternative is to treat such voters as sacrificial lambs in the elective process and void their ballots as a consequence of a mechanical failure over which they had no control. The Court of Appeals would not *821 and did not do so when the office in issue was the County Treasurer of Chemung County. (See, People ex rel. Deister v Wintermute, 194 NY 99, supra.) This court will not do it when the office in issue is Town Councilman of the Town of East Otto in Cattaraugus County.
The defendant relies heavily upon the decision in Matter of Hogan v Supreme Ct. (281 NY 572). In the opinion of this court such reliance is misplaced. Matter of Hogan was an action brought under the provisions of section 330 (now § 16-100) of the Election Law. It was brought by a disappointed candidate who sued in his individual capacity. The decision was that the statutory limitations on jurisdiction afforded the Supreme Court did not permit that court to receive the testimony of electors to establish the number of votes cast for a candidate on a defective voting machine in an action brought under the provisions of section 330 of the Election Law. The Court of Appeals did not there nor has it at any time since overruled its decision in People ex rel. Deister v Wintermute (supra), that such evidence is properly received in an action in quo warranto brought by the Attorney-General.
Exatriination in the field of disputed elections discloses many hulks that have run aground on the shoals of the procedure selected to contest them. The initial action brought by the plaintiff herein with the other 146 voters as coplaintiffs for a declaratory judgment is an example in hand. See, Ellis v Eaton (136 AD2d 890 [4th Dept 1988]) for analysis of appropriate procedures. Ellis v Eaton pointed out clearly that when issues of fact were involved an action in quo warranto now statutorily embodied in section 63-b of the Executive Law was the exclusive means of trying title to public office. Where issues of law only were involved, the court noted, mandamus in a CPLR article 78 proceeding would be authorized.
It must be conceded that there is both a legislative and judicial reluctance to permit reconstruction of what took place in the privacy of a voting booth. Such determinations do involve considerations of voters’ intent and action, matters which do not lend themselves easily to cross-examination or contradictory evidence. Thus it is, that it is in only the most egregious circumstances that our law permits judicial resolution of election disputes.
To confine such actions to a bare minimum the Legislature has procedurally limited them to only such actions as in the opinion of the State’s highest legal officer, the Attorney-Gen *822 eral, are so flagrant in result as to require exposure to judicial examinations. The fact that the instant action is the first quo warranto action brought by an Attorney-General in 79 years attests not only to the rigorous limitations which that officer places on such actions but also his view of the manifest injustice which resulted in the election in issue.
This court takes judicial notice that before the instant action was commenced the Attorney-General conducted a full-scale hearing into the facts and circumstances of the election in issue. Further he lent his office to the commencement of the instant action even after the attempt of the plaintiff and the other 146 disenfranchised voters to secure redress in an action for declaratory judgment was unsuccessful. The Attorney-General is to be congratulated for exercising his discretion in seeking to protect the elective franchise of a handful of rural voters. Such voters are also to be commended for the zeal with which they have pursued their right to have their votes counted for the candidate of their choice. It is clear to this court that the right to vote is regarded as a civic treasure in the Town of East Otto in Cattaraugus County. To the voters there it is a constitutional privilege to be protected without regard to the time or cost of energy and money.
For the reasons stated this court holds (1) that Ivan Eaton holds the office of Town Councilman of the Town of East Otto, Cattaraugus County, unlawfully and is to be immediately ousted therefrom and (2) that James Ellis was and is the proper and duly elective candidate to that position and (3) that James Ellis is entitled to serve as a councilman of said township immediately upon taking and filing his constitutional oath.