Matthew SHANNON; Josephine Alexander; Henry A. Fiebiger; Sandra R. Fiebiger; A. Paul Herubin; and Patrick Gubbins, Plaintiffs,

v.

David JACOBOWITZ; Oneida County Board of Elections; Angela Pedone Longo, as Commissioner of Oneida County Board of Elections; and Patricia Ann Dispirito, as Commissioner of Oneida County Board of Elections Defendants.

No. 5:03–CV–1413.

United States District Court, N.D. New York.

Dec. 30, 2003.

Brian Lee Quail, Schenectady, NY, for Plaintiffs.

Saunders, Kahler & Locke, L.L.P., Utica, NY (Gregory J. Amoroso, of counsel), for Defendant David Jacobowitz.

Oneida County Department of Law, Utica, NY (Linda M.H. Dillon, Harris J. Samuels, of Counsel), for Defendants Oneida County Board of Elections, Angela Pedone Longo, and Patricia Ann DiSpirito.

### MEMORANDUM–DECISION and ORDER and PRELIMINARY INJUNCTION

HURD, District Judge.

## I. INTRODUCTION

Plaintiffs Matthew Shannon, Josephine Alexander, Henry A. Fiebiger, Sandra R. Fiebiger, A. Paul Herubin and Patrick Gubbins filed the complaint in this matter on November 21, 2003, pursuant to 42 U.S.C. § 1983. Essentially plaintiffs claim a violation of their constitutional right to vote. Plaintiff Matthew Shannon ("Shannon") alleges that as a candidate he was wrongfully denied the count of no less than 69 votes because of a voting machine malfunction. The other plaintiffs are voters claiming that their votes were wrongfully not counted due to the voting machine malfunction.

An Order to Show Cause and Temporary Restraining Order issued on December 4, 2003, directing defendants to show cause why an Order should not be made declaring that Shannon was duly elected to the office of Whitestown Town Supervisor or that a new election is required; and enjoining the defendant David Jacobowitz ("Jacobowitz") from assuming the office or declaring null and void any action taken by defendant Oneida County Board of Elections ("Board of Elections") to certify Ja-

cobowitz as the winner of the election. (Docket No. 8.) Jacobowitz opposed. (Docket No. 18.) With permission to make a late filing, the Board of Elections, and individual defendants Angela Pedone Longo ("Longo"), and Patricia Ann DiSpirito ("DiSpirito") (collectively "County defendants") also opposed.[1] (Docket No. 16.) By way of reply, Shannon further requested a Temporary Restraining Order precluding the Board of Elections from certifying David Jacobowitz as having been elected Whitestown Town Supervisor. (Docket No. 20.)

Oral argument was heard on December 18, 2003, in Utica, New York. At oral argument it was pointed out to counsel that the *sole issue* on this motion was whether a preliminary injunction would be issued. It was further noted that there is no dispute regarding the material facts. However, a final decision cannot be made until after a motion for summary judgment or a trial. Counsel did not disagree.

Following oral argument, an Amended Temporary Restraining Order, effective until January 2, 2004, or until a decision is rendered upon the application for a preliminary injunction, was issued. It enjoined Jacobowitz from taking the office of Whitestown Town Supervisor and the Board of Elections from certifying a winner in the race for Whitestown Town Supervisor. (*See* Docket No. 22.) Decision was reserved on whether to grant or deny a preliminary injunction.

## II. FACTS

The following facts are as set forth by plaintiffs in admissible form and have not been contested or challenged by defendants.[2] The statistical derivations from those facts are as set forth by plaintiffs

---

**1.** While the document filed is captioned as opposition, at oral argument counsel for the County defendants stated that they essentially take no position on this matter.

**2.** The only even arguable contest of the facts set forth by plaintiffs was by Jacobowitz. He

asserted (albeit in a conclusory fashion in a memorandum of law unsupported by any factual submission) that the recollection of the voters whose affidavits were submitted was questionable and that the Town Supervisor may not have exactly the suggested powers or

and the defendants have not questioned these statistics nor suggested any inaccuracies in them.

Shannon is the Town Supervisor in the Town of Whitestown, Oneida County, New York. He was a candidate for re-election to that office of in the November 2003 general election. He was opposed by Jacobowitz. The Town Supervisor serves a term of two years. The term of office of the winner of the election was to begin on January 1, 2004.

Both candidates' names appeared on the ballot, Jacobowitz appearing on lines 11–A (Republican Party) and 11–E (Working–Family Party), and Shannon appearing on lines 11–B (Democratic Party), 11–C (Independence Party), and 11–D (Conservative Party). The election was held on November 4, 2003. Upon the closing of the polls, the machine votes and any affidavit ballots, emergency ballots, and absentee ballots were tolled. The Board of Elections unofficially declared the winner of the greatest number of votes to be Jacobowitz, by a margin of 25 votes. The total vote was tallied at 2,936 to 2,911. However, the Statement of Canvass noted a "possible machine break." (*See* Quail Reply Aff. attachment.) The "possible machine break" note was signed by all four elections inspectors, two Democratic and two Republican.

Examination of the inspection return for Election District 14 shows that on line 11–B (one of the lines on which Shannon's name appears) of Voting Machine 14A, (also identified as Voting Machine No. 118408) only 1 vote [3] was recorded. The next lowest number of votes on the machine for either candidate was 8. The machine tally was as follows:

| | | Voting Machine No. 118408 | Other Voting Machine District 14 |
|---|---|---|---|
| Jacobowitz | 11–A (Republican) | 122 | 107 |
| Shannon | 11–B (Democrat) | 1 | 119 |
| Shannon | 11–C (Independence) | 16 | 12 |
| Shannon | 11–D (Conservative) | 9 | 15 |
| Jacobowitz | 11–E (Working–Family) | 8 | 11 |
| | | Total: 156 | 264 |

*Id.* Although the total number of votes registered by Voting Machine No. 118408 was 156, the public counter of the machine registered 295 voters who entered the machine. *See id.;* County Defts.' Ans. ¶ 5. Thus, a potential 139 votes were uncounted by the machine.

Typically there is some non-participation among voters. The rate of non-participation for Voting Machine No. 118408 in District 14 was 47.1%. The next highest rate of non-participation recorded in any district in the Whitestown Town Supervisor race was 7.1%. The non-participation rate on the other machine in District 14 was 1.49%.

authority relating to personnel and budget matters. At oral argument, counsel for Jacobowitz reiterated that the only contested fact relates to the reliability of the affiants, asserting that they should be subject to cross-examination. It is noted that any such cross-examination would take place at trial, not at this preliminary juncture.

3. The machine actually recorded one-half of one vote. (*See* County Defts.' Ans. ¶ 5.) This "half vote" was tallied as one vote, and therefore is referenced throughout this opinion as one vote.

Without any of the 139 uncounted votes, Shannon received less than 1% of the vote on the Democratic line on Voting Machine No. 118408 in District 14. The lowest percentage he received on the Democratic line on any other voting machine in Whitestown was 32%. On the Democratic line on the other machine in District 14, he received 40.53% of the vote, 119 votes.

Shannon received only 1 vote on Voting Machine No. 118408 in District 14 on the Democratic line (11–B). Considering all of the other races on the ballot, the lowest number of Democratic votes any candidate on a voting machine received was 89. Thus, Shannon would have underperformed his party's next lowest vote-getter by a factor of 1: 89.

Seventy (70) voters have sworn under oath that they voted for Shannon in Whitestown District 14. (Pltfs.' Aff. of Voters.) Each further swore that they cast a vote for Shannon on the Democratic line (11–B) using the voting machine located in the northwest corner of the gym (the polling place) on the left side facing east. *Id.* The voting machine located in the northwest corner of the gym on the left side facing east has been identified as Voting Machine No. 118408. Thus, these 70 voters have sworn that they voted for Shannon on line 11–B using Voting Machine No. 118408, on which only 1 vote was registered.

Additionally, on December 3, 2003, Voting Machine No. 118408 was tested pursuant to New York Election Law § 9–208(3). (Quail Reply Aff. Ex. 1.) Longo and DiSpirito, as well as the candidates' counsels, observed the test. *Id.* The Voting Machine No. 118408 was unlocked and reset to zero. *Id.* The lever was pulled (the same action used to vote) on line 11–A (Jacobowitz's Republican line) 100 times in succession. *Id.* The machine registered 100 votes. *Id.* The same procedure of pulling the lever 100 times was repeated on line 11–B (Shannon's Democratic line). *Id.* The machine counter registered *zero*. *Id.* Ralph Colicci, a duly trained and appointed Machine Technician, performed the test and opined that "the mechanical wheel which operates the counter on Line 11B malfunctioned in such a way as to not advance each time the lever was pulled by a voter on line 11B." *Id.*

In summary, the essential facts are simply as follows:

1. The "machine vote" was 2,936 for Jacobowitz and 2,911 for Shannon, placing Jacobowitz ahead by 25 votes;

2. Voting Machine No. 118408 malfunctioned;

3. As a result of the malfunction, Shannon had at least 69 votes[4] and perhaps as many as 139 votes[5] cast for him but not counted;

4. If the uncounted votes are counted, Shannon received the greater number of votes by a margin of between 44 and 114 votes;[6]

5. Shannon is the actual winner of the election for Town Supervisor of the Town of Whitestown.

## III. DISCUSSION

### A. Preliminary Injunction Standard

 A preliminary injunction may issue provided that the moving party demonstrates "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party

---

4. The 70 sworn votes less the 1 recorded vote.

5. The potential number of unrecorded votes.

6. The sworn votes and potential unrecorded votes less Jacobowitz's margin of 25 votes.

requesting the preliminary relief." *Gold v. Feinberg,* 101 F.3d 796, 800 (2d Cir.1996) (internal quotations omitted). Plaintiffs could demonstrate a likelihood of success on the merits of their due process claim by showing purposeful, intentional action on the part of defendants. *Id.* However, *if the defendants' conduct was negligent or unintentional, federal relief is available only in the absence of an adequate and fair state remedy. Id.* In order to demonstrate a likelihood of success on the merits on their equal protection claim, plaintiffs must establish that defendants intentionally or purposefully discriminated against them in denying their constitutional right to vote. *See id.*

Plaintiffs make no claim here of intentional conduct.[7] Rather, they allege an unintentional malfunction in Voting Machine No. 118408. Moreover, defendants make no argument that plaintiffs' right to vote as guaranteed by the United States Constitution is not implicated by the failure of the voting machine to count votes. Thus, on this motion for a preliminary injunction the initial issue is whether any available state remedy is adequate and fair with regard to likelihood of success on plaintiffs' due process claim.

### B. *Quo Warranto Action*

 The parties do not disagree that plaintiffs' *only* available state remedy is a *quo warranto* action pursuant to N.Y. Exec. L. § 63–b. (Pltfs.' Mem. at 10; Deft. Jacobowitz's Mem. at 6–7; *see* County Defts.' Mem. at 3.) The *quo warranto* action is available to challenge title to a

public office. *See Delgado v. Sunderland,* 97 N.Y.2d 420, 423–24, 741 N.Y.S.2d 171, 767 N.E.2d 662 (N.Y.2002). "Challenges to the outcome of a general election based upon alleged voting machine malfunctions necessarily fall within the purview of quo warranto." *Id.* at 424, 741 N.Y.S.2d 171, 767 N.E.2d 662.

 The procedure in a *quo warranto* action is as follows. An aggrieved candidate may request that the Attorney General of the State of New York investigate. The Attorney General thusly investigates and screens such challenges to the outcome of general elections. *Id.* The Attorney General may, in his or her discretion, bring a *quo warranto* action. *Id.* Only the Attorney General has the authority to bring a *quo warranto* action. *Id.* Such an action may be commenced "only after the alleged 'usurper' has taken office." *Id.* (quoting N.Y. Exec. L. § 63–b.) In this manner, the possibility of a vacancy in the office "for possibly a protracted period while the challenged election result is being litigated through the courts to a final conclusion" is avoided. *Id.* If the Attorney General commences the action and is successful, the "usurper" is removed from office and the aggrieved candidate is sworn in. N.Y. Exec. L. § 63–b (McKinney 2002); *see State ex rel. Ellis v. Eaton,* 143 Misc.2d 816, 822, 541 N.Y.S.2d 287 (N.Y.Sup.Ct.1988) (ordering the usurper ousted and oath of office administered to the rightful candidate). The aggrieved candidate may be entitled to back pay from the date the term began. N.Y. Exec.

---

7. At oral argument, plaintiffs' counsel suggested that the County defendants acted purposefully in failing to count additional votes for Shannon, despite overwhelming evidence that such votes were cast. However, this allegation is insufficient in that the County defendants clearly did not have authority to do anything other than tally the votes registered (whether by machine or otherwise) and de-

clare who garnered the greatest number of such votes. *See In re Ingamells,* 259 A.D. 36, 40–41, 18 N.Y.S.2d 247(1940) (noting that the Board of Elections may direct a recanvass, but the canvassing board's duties are purely ministerial; it may only count the votes, do necessary computations, and declare a winner).

L. § 63–b(4). The "usurper" is subject to arrest and a $2,000 fine, upon an order of the court. N.Y. Exec. L. § 63–b(2), (3).

In this case—under *quo warranto*—the only state remedy for Shannon—he, Jacobowitz, and the voters and taxpayers of Whitestown would have to await the following procedure before a final decision is made as to the duly elected Town Supervisor:

1. The Board of Elections certifies Jacobowitz the winner of the election;

2. Jacobowitz is sworn in as Town Supervisor;

3. Shannon makes a request in writing that the Attorney General investigate;

4. The Attorney General investigates;

5. The Attorney General decides whether or not to commence a *quo warranto* action. If the Attorney General declines to bring an action, Shannon has no further remedy;

6. *Quo warranto* action is commenced in New York State Supreme Court by the Attorney General against Jacobowitz with service of a Summons and Complaint;

7. Jacobowitz files and serves an Answer to the Complaint;

8. Discovery is conducted, in the form of Bill of Particulars, Depositions, etc.;

9. Summary judgment motions are filed, answered, and argued; and/or

10. A trial is held;

11. A decision is rendered following motion or trial;

12. Appeal is made to the Appellate Division;

13. Appeal is made to the Court of Appeals;

14. Final decision rendered by the Court of Appeals;

15. If the Attorney General is successful, Jacobowitz is subject to arrest and a fine;

16. Jacobowitz is removed from office;

17. Shannon assumes office;

18. Shannon brings action to recover back pay and any other compensatory damages suffered.

Plaintiffs argue that *quo warranto* is not an adequate and fair remedy. Jacobowitz argues to the contrary.

### C. *Quo Warranto—Is it Adequate?*

It is apparent upon the facts present in the instant matter that due process relief must be available to plaintiffs in this federal forum. Jacobowitz was unofficially declared the winner of the greatest number of votes in the November 2003 race for Town Supervisor in the Town of Whitestown, by a margin of only 25 votes. In Whitestown District 14, one of the two voting machines in use malfunctioned, failing to register approximately 139 votes that were cast. During a post-election test, the malfunctioning machine failed to register 100 votes cast for Shannon, while 100 votes cast for Jacobowitz did register. Seventy (70) voters have sworn that they voted for Shannon on the malfunctioning machine. Only 1 of those 70 votes were counted for Shannon, leaving 69 uncounted votes, plus an additional potential 70 uncounted votes for him. Considering the original 25–vote margin of victory for Jacobowitz, it is plain that Shannon was the true winner by a margin of at least 44 and as much as 114 votes.

Under New York law the Board of Elections may only count the votes that were registered, recanvass, and report the numbers. *See* N.Y. Election L. §§ 9–206, 9–208; *In re Ingamells*, 259 A.D. at 40–41, 18 N.Y.S.2d 247. The Board of Elections may conduct a test of a suspected malfunctioning voting machine. § 9–208(3). However, there is no provision for any remedial measures to be taken if, or, as in this case,

when, it is determined without a doubt that a malfunction did occur. The Board of Elections has no option under state law—it must certify a winner based upon the reported votes regardless of any voting machine test. Neither an aggrieved candidate nor voters have a mechanism by which they can correct an election irregularity before the term of office is to begin. *Quo warranto,* in fact, *requires* that the wrong person assume office. Even an Article 78 action in New York State Supreme Court will not lie. *See Delgado,* 97 N.Y.2d at 423–24, 741 N.Y.S.2d 171, 767 N.E.2d 662.

■ Jacobowitz contends that *quo warranto* is an adequate remedy, citing the benefits as set forth by the New York Court of Appeals. In *Delgado,* the court explained that *quo warranto* provides for investigation and screening of challenges by the Attorney General, it affords a full opportunity to assert legal rights, and prevents a protracted vacancy in a contested office. 97 N.Y.2d at 424, 741 N.Y.S.2d 171, 767 N.E.2d 662.

No investigation is needed in this matter, as there is no question that the voting machine malfunctioned. Further, it is clear that Shannon was the true winner (subject to cross-examination of voters who have sworn that they voted for Shannon on the malfunctioning voting machine). No screening is required. Shannon obviously has a meritorious claim that the voting machine malfunctioned. The *Delgado* court suggests that *quo warranto* "is presumed to afford . . . a full opportunity to assert a legal right." *Id.* However, the court fails to enlighten us on how that is so, when, in the face of an unquestionably wrong outcome, the remedy is purely discretionary and it occurs well after wrong was done. Moreover, it cannot be "a full opportunity to assert a legal right" when the process may very well take the entire term of the office. *See. e.g., State ex rel.*

*Ellis,* 143 Misc.2d at 817, 541 N.Y.S.2d 287 (November 1985 election challenged, November 1988 decision in *quo warranto* action); *see also People v. Delgado,* 767 N.Y.S.2d 124, 127–28 (N.Y.App. Div.2d Dep't 2003) ("*Delgado II*") (denying, in November 2003, a motion to dismiss in a *quo warranto* action challenging a November 2001 election); *Delgado,* 97 N.Y.2d at 424, 741 N.Y.S.2d 171, 767 N.E.2d 662 (recognizing that a *quo warranto* proceeding may be "protracted"). Finally, the parties all agree that the incumbent, Shannon, would remain in office pending resolution of this litigation. *See* N.Y. Pub. Off. L. § 5 (McKinney 2001). There is no danger of a "protracted vacancy" in the office of Whitestown Town Supervisor.

The benefits as set forth by the Court of Appeals provide no support for the argument that *quo warranto* is an adequate remedy in this case. In fact, analysis of the purported benefits demonstrate its inadequacy. First, it is unnecessary to conduct an investigation, as the canvass of votes and the machine test clearly demonstrated that the voting machine malfunctioned. Second, it is woefully unclear how a discretionary, after-the-fact state court action permits an aggrieved candidate and voters whose votes have not been counted to assert their rights. Finally, there is no danger of a vacancy necessitating the challenged winner to take office.

## D. *Quo Warranto—Is it Fair?*

Further, *quo warranto* is not a fair remedy for the aggrieved candidate. As noted, bringing a *quo warranto* action is discretionary with the Attorney General; therefore, it is only a *potential* remedy for an aggrieved candidate. All Shannon could do in this instance is request that the Attorney General investigate the matter. If the Attorney General decided not to do so, or decided not to pursue filing an action after an investigation was conducted, Shannon has no recourse. How can a

remedy be fair when an aggrieved candidate who is the clear winner has no say in the matter of whether to pursue vindication of his First Amendment rights? The answer is self-evident.

Also, even if the Attorney General decides to bring a *quo warranto* action on behalf of Shannon, it will take months or even years to resolve. *See State ex rel. Ellis*, 143 Misc.2d at 817, 541 N.Y.S.2d 287 (three years); *Delgado II*, 767 N.Y.S.2d at 127–28 (motion practice occurred two years after contested election; case still pending). How can a remedy be fair when an aggrieved candidate who is the clear winner must wait perhaps to the end of the term of office to receive justice? Again, the answer is self-evident.

Neither is the remedy fair to voters [8] or taxpayers in Whitestown. In order for the *quo warranto* remedy to be pursued, Jacobowitz must take office. This would mean that voters and taxpayers will be governed by someone whom they did not elect. There is no mechanism to prevent the "usurping" of the office. Further, Jacobowitz would be paid the salary of the Town Supervisor. Later, if a *quo warranto* action is brought and it is determined that Shannon is the rightful Town Supervisor, as every indication at this juncture points, he would be entitled to back pay. Thus, the taxpayers of Whitestown may be paying the Town Supervisor salary twice. Most importantly, voter-plaintiffs would be denied the fundamental right to have the vote they cast counted. *See Griffin v. Burns*, 570 F.2d 1065, 1074–75 (1st Cir. 1978) (discussing the constitutional right to vote and to have that vote counted in local, state and federal elections). As with the aggrieved candidate, voter-plaintiffs would have no say in the matter of pursuing vindication of their right to vote with the *quo warranto* remedy. This is patently unfair.

Further, the remedy is unfair to the Board of Elections. The Board of Elections must certify an election result that its members know, based upon the canvass of votes and the test of the voting machine, is contrary to the actual vote. The Board of Elections would know that its certification resulted in a candidate whom the electorate did not choose taking office.

In fact, the remedy is equally unfair to Jacobowitz. He would take office under a cloud. While serving as Town Supervisor, he would be uncertain if he would be able to serve a full term. This uncertainty may affect his decision-making. It may prevent him from filling positions of authority in his administration with the persons of his choice. He would be required to expend the time, money, and effort in the defense of a lawsuit which may last months or even years. If he is unsuccessful in defending the lawsuit, he would be branded as a "usurper" even though he only followed the mandate of the Board of Elections. He would also be exposed to possible arrest and a fine.

In short, plaintiffs *and* defendants have no fair state remedy. It is not a fair remedy to know without doubt that votes were cast in favor of a candidate but lack a provision in the law by which those votes can be counted within a reasonable time. It is not a fair remedy to sit idly and watch the opposing candidate be sworn in, knowing full well that the wrong person is taking public office. It is not a fair remedy to forgo your duty, as a duly elected public servant, to fill the position for which you were elected by the citizenry. It is not a fair remedy, as a citizen, to be governed by one whom it is clear to see was not elected to the office he holds. It is not a fair remedy to require the Board of Elections to certify an election result

---

**8.** In addition to Shannon, the other five plaintiffs in this action are voters.

which it knows is incorrect. It is not a fair remedy to the opposing candidate to be sworn into office under uncertain circumstances and to be exposed to personal liability. It is not a fair remedy where the one avenue to correct such an injustice is available only after the fact, and then is purely discretionary and doubtless protracted.

### E. *Irreparable Harm*

█ Plaintiffs have demonstrated that *quo warranto* is not an adequate and fair state remedy, thus establishing a likelihood of success on the merits of their due process claim. It is also apparent that irreparable harm would occur absent a preliminary injunction. The Board of Elections would carry out its ministerial function and certify Jacobowitz winner of the Town Supervisor race. *See In re Ingamells,* 259 A.D. at 41, 18 N.Y.S.2d 247. Shannon and the voter-plaintiffs have no method of preventing this. Jacobowitz would assume office. Jacobowitz would govern, making policy and personnel decisions. Shannon would have no input into the policy and personnel decisions being made, despite his having been the true winner of the election. The voter-plaintiffs, as well as the other voters and taxpayers of Whitestown, would be governed by a person whom they did not elect, in other words, a "usurper." Most importantly, the fundamental right to vote of plaintiffs would have been violated without any recourse to them. These are harms that cannot be recompensed.

### F. *Conclusion*

The "machine vote" has Jacobowitz the winner by 25 votes. The "actual vote" has Shannon the winner by between 44 and 114 votes. The state law remedy for such a situation is not adequate nor fair to the candidates, the Board of Elections, or the voters and taxpayers of the Town of Whitestown. The plaintiffs have set forth facts which are sufficient to state a due process claim under § 1983 and warrant the issuing of a preliminary injunction.

The adequate and fair remedy is to expedite the trial of this action during the month of January 2004 (as opposed to six months to two years or more,[9] if at all, under the antiquated [10] state law remedy). In order to accomplish that result, a scheduling order is being filed simultaneously with this Memorandum–Decision and Order and Preliminary Injunction which sets a bench trial date for January 20, 2004. In the meantime, Shannon shall remain in office.

Therefore, it is

ORDERED that

1. Defendant Oneida County Board of Elections is preliminarily enjoined from taking any action which would certify Jacobowitz as the winner of the November 4, 2003, election for Town Supervisor of the Town of Whitestown; and

2. Defendant David Jacobowitz is preliminarily enjoined from assuming the office of Town Supervisor of the Town of Whitestown.

IT IS SO ORDERED.

---

**9.** The contested office of Town Supervisor for the Town of Whitestown is only a two-year term.

**10.** *See Delgado II,* 767 N.Y.S.2d at 128 (noting that the law of *quo warranto* "was, for the most part, set in the 19th century or earlier" and suggesting that the legislature "re-examine these issues in light of 21st century considerations").