Lila GOLD; Howard Lasher; Delores Vargas; Arcadia Rodriguez; Audra Rodriguez; Gloria Hacken; Paul Podhaizer; Howard Babbush; Pedro Lamboy, **Plaintiffs–Appellants–Cross–Appellees,**

v.

Michael FEINBERG; New York City Board of Elections; Kenneth Evans, **Defendants–Appellees,**

John Sampson; Adele Cohen; Martin Bromberger, **Defendants–Appellees–Cross–Appellants.**

Nos. 984, 987 and 988, Dockets 96–9274(L), 96–9278(XAP), 96–9284(XAP) and 96–9308(XAP).

United States Court of Appeals, Second Circuit.

Argued Oct. 7, 1996.

Decided Oct. 8, 1996.

Written Opinion Filed Nov. 26, 1996.

Dudley Gaffin, Gaffin & Mayo, P.C., New York City, Jeffrey D. Buss, Smith Buss & Jacobs, L.L.P., New York City, Jerry H. Goldfeder, New York City, for Plaintiffs–Appellants.

Franklyn H. Snitow, Snitow & Pauley, New York City (Kenneth A. Kanfer, Snitow & Pauley, on the brief), for Defendant–Appellee Michael Feinberg.

Fabian Palamino, New York City, for Defendants–Appellees New York City Board of Elections, and Kenneth Evans, and for Defendant-Appellee-Cross-Appellant Michael Feinberg.

John W. Caroll, Wolfson & Carroll, New York City, for Defendants–Appellees–Cross–Appellants Adele Cohen and Martin Bromberger.

Gerald J. Dunbar, Brooklyn, NY, for Defendant–Appellee–Cross–Appellant Kenneth Evans.

B. Mitchell Alter, Alter and Barbaro, Esqs., Brooklyn, NY, for Defendant–Appellee–Cross–Appellant John Sampson.

Before: OAKES, ALTIMARI and MAHONEY,* Circuit Judges.

ALTIMARI, Circuit Judge:

The present case, along with a number of companion cases,[1] involves constitutional challenges to state primary elections held in Kings County, New York, on September 10, 1996. The elections were marked with irregularities, including, *inter alia:* (1) delays in the arrival of voting machines at approximately one-third of the election districts, (2) a miscounting of votes resulting from improper placement of templates over ballots, and (3) the presence of ineligible candidates on the ballot. According to the plaintiffs-appellants, these irregularities, among other things, deprived voters of their right to vote in violation of 42 U.S.C. § 1983. The United States District Court for the Eastern District of New York (Trager, *J.*) agreed with the plaintiffs, and entered a preliminary injunction directing that in specified election districts the Democratic primary election for Surrogate of Kings County and certain other county offices be continued on October 10, 1996. Plaintiffs and defendants appeal on an expedited basis from that order.

After oral argument was heard in this appeal, a *per curiam* decision was issued reversing the district court's preliminary injunction, and stating that an opinion articulating the rationale for our decision would follow. *See Gold v. Feinberg,* 97 F.3d 680 (2d Cir.1996). An emergency appeal was taken by the appellant Gold to the United States Supreme Court seeking a stay of this Court's order, which was denied by Justice Ginsburg. As we explain below, the rationale for our decision is that controlling precedent in this Circuit requires that in order to find a violation of § 1983 there must be evidence of an intentional deprivation of the right to vote, and no such evidence exists here. Our rationale equally applies to each of the companion cases cited in footnote 1 above, but we write separately in *Coto v. Gangemi* only because that case involved slightly different facts warranting further discussion.

## Background

On September 9, 1996, the day before the primary election at issue was to occur, New York State Supreme Court Justice William H. Garry issued an order removing Judge Fern Goldstein's name from the ballot for the Democratic Surrogate's race in Kings County. Federal injunctive relief from the state court order was denied later that evening. According to the record, because of the late-issued order of Justice Garry, voting machines that had not been delivered to polling places by the evening of September 9th had to be modified to conform to the order.

The Board of Elections arranged with the Board of Education to have schools that were to be used as polling places kept open late for delivery of the voting machines. However, a breakdown in communication occurred, and notice of the late delivery never reached many of the individual school custodians who were to keep the buildings open. This resulted in the Election Board's inability to deliver more than 300 of the total 1,837 Kings County voting machines until well after polling places had opened at 6:00 a.m. on September 10th. Although paper ballots are available when voting machines are inoperative, such ballots are delivered inside the voting machines and, thus, also remained unavailable to voters in the affected polling places until the voting machines arrived. Eventually, the voting machines were delivered, some by late morning and others during the afternoon. The late arrival of voting machines was the single irregularity alleged

---

* Our beloved colleague the Hon. J. Daniel Mahoney authored the initial *per curiam* decision to reverse the district court in this case, which was rendered after oral argument was heard. Two weeks later, however, he tragically died as the result of an accident. Judges Oakes and Altimari have therefore completed this opinion.

1. *Coto v. New York City Board of Elections,* Nos. 96–9268, 96–9292; *Chapland v. New York City Board,* Nos. 96–9286(L), 96–9288(XAP); *Bellazario v. Board of Elections,* Nos. 96–9282(L), 96–9294(XAP); *Evans v. Board of Elections,* Nos. 96–9296(L), 96–9298(XAP).

in all of the companion cases accompanying this appeal.

Unique to this particular case is a second alleged irregularity: namely, the failure to remove Judge Goldstein's name from approximately seventy-five percent of the voting machines pursuant to Justice Garry's order. After that order was issued, technicians were dispatched to modify the voting machines which had already been delivered. Attempts to correct the ballots, however, proved unsuccessful, and in some cases counterproductive, because of a failure by the technicians to account for a procedure used to list candidates whereby the candidates' name order is rotated from ballot to ballot so that no candidate's name appears first on the ballot more frequently than any other candidate's name. By failing to account for this procedure when realigning the templates, some votes previously cast were deleted and others cast for one candidate were effectively "switched" to another candidate. As a result, plaintiffs contend that ineligible candidates were credited with over 2,000 votes out of a total of approximately 77,000 votes cast in the Surrogates race.

On September 20, 1996 the plaintiffs, who include registered voters allegedly deprived of the right to vote in the primary election and unsuccessful candidates for the offices of Surrogate, Democratic Party State Committee Member, and State Senate, commenced the present action against the prevailing candidates in the aforementioned primary races and the New York City Board of Elections. Plaintiffs simultaneously moved for a preliminary injunction enjoining the New York City Board of Elections from certifying the results of the September 10, 1996 primary, and directing the Board of Elections to schedule and administer a new, county-wide Democratic primary election in all the races allegedly tainted by the primary's irregularities. Similar actions filed by other plaintiffs soon followed. Although the district court did not formally consolidate all of the cases, they were assigned to Judge Trager, who held hearings in each of the cases and then issued an oral ruling from the bench covering all of them.

The district court rejected arguments put forward by several of the parties that decisions by some members of the Board of Elections and its staff regarding delivery of the voting machines may have been made to benefit a particular candidate, finding that any such evidence was insufficient to support granting the plaintiffs' motion. Nonetheless, it found that the delays in the arrival of the voting machines were not the result of inadvertence, but of conduct constituting "willfulness within the meaning of the civil rights law and the case law when it is the result of procedures, policies, and practices, and actions that have persisted throughout the years." Accordingly, the district court held that the irregularities constituted a violation of 42 U.S.C. § 1983. To remedy the consequences caused by the untimely delivery of the voting machines, Judge Trager entered a preliminary injunction ordering a continuation of the primary election on October 10, 1996, between the hours of 6:00 to 9:00 p.m., for those eligible voters who had not voted on September 10, 1996 in specified election districts.

This appeal followed and was considered on an expedited basis. Plaintiffs appeal from the district court's denial of the broader injunctive relief they desired; that is, a declaration that the original primary election was void and an order that an entirely new primary election be held. Several of the defendants who won the primary and are candidates for the general election cross-appeal. The defendants John Sampson, Adele Cohen and Martin Bromberger appeal, contending that the plaintiffs lack standing to bring the present claims, and that the district court improperly exercised jurisdiction over this case. Sampson further contends that the plaintiffs failed to meet their burden of showing irreparable harm and a likelihood of success on the merits, among other things. Like the plaintiffs, the defendant Kenneth Evans contends on appeal that an entire new primary election in all election districts be held. The defendant Michael Feinberg responds to the plaintiffs' appeal by contending that the district court's injunction was appropriate and should be affirmed, but cross-appeals and argues that the district court

erred in retaining jurisdiction over the matter.

Although plaintiffs' complaint also alleges claims under the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973–1973ff–6, the First and Fourteenth Amendments to the United States Constitution, Article II, Section 1 of the New York State Constitution, and the New York State Election Law, the district court's injunction was entered on the basis of § 1983, and we limit our review here to that claim.

### Discussion

■■■ The general standard for issuing a preliminary injunction requires that the movant show " '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.' " *International Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 70 (2d Cir. 1996) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (*per curiam*)). We review the grant of a preliminary injunction and the denial of the motion for a broader injunction for an abuse of discretion, and "will reverse the district court only if it relied on clearly erroneous findings of fact, misapprehended the law, or erred in formulating the injunction." *Id.* As we explain immediately below, the district court abused its discretion in granting the injunction because it based its relief on a misapprehension of the law in this Circuit.

In *Powell v. Power*, 436 F.2d 84 (2d Cir. 1970), voters sought relief under § 1983, alleging that state election officials had permitted a number of unqualified voters to cast primary ballots in violation of the equal protection and due process clauses. We held that a § 1983 action to remedy errors in the election process allegedly violating the equal protection clause does not exist unless the state action constituted " 'intentional or purposeful discrimination.' " *Id.* at 88 (quoting *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944)). We further held that the due process clause "offer[s] no

guarantee against errors in the administration of an election," at least where state law provides a fair and adequate method for correcting such errors. *Id.* Our decision in *Powell* rested on comity considerations. As Judge Kaufman explained:

> Were we to embrace plaintiffs' theory [that willful or knowing conduct is not required to state a claim under § 1983], this court would henceforth be thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law. Absent a clear and unambiguous mandate from Congress, we are not inclined to undertake such a wholesale expansion of our jurisdiction into an area which, with certain narrow and well defined exceptions, has been in the exclusive cognizance of the state courts.

*Id.* at 86 (footnote omitted). *Powell* also rested on the principle that not every human error rises to the level of a constitutional violation. *Id.* at 88 ("[W]e cannot believe that the framers of our Constitution were so hypersensitive to ordinary human frailties as to lay down an unrealistic requirement that elections be free of any error."). The Supreme Court has subsequently explained that such a principle underlies the requirement that more than negligent conduct by the state actor is needed in order for a cognizable § 1983 claim to exist based on violations of the due process clause. *See Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official. . . .") (emphasis in original); *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986) (same).

■■■ Therefore, under *Powell*, plaintiffs who can establish nothing more than "unintended irregularities" in the conduct of elections are barred from obtaining § 1983 relief in federal court, *provided an adequate and fair state remedy exists*. *Powell*, 436 F.2d at 85, 88. *See also Donohue v. Board of Elections*, 435 F.Supp. 957, 966 (E.D.N.Y.1976) (holding that "[p]urposeful deprivation of the

right to vote will not be assumed merely because there is evidence that election officials acted incompetently or negligently....").

Here, there are no substantiated allegations of any wrongful intent on the part of state officials. All of the irregularities alleged to have occurred were the direct result of a late-issued judicial order of Justice Garry. The delayed arrival of voting machines is explained by the late-issued order and a breakdown in the communication system used to notify individual school custodians that the schools were to be kept open for late-night delivery of the corrected machines. Similarly, the technicians responsible for disabling levers and correcting ballots in all voting machines were faced with a herculean task, and their failure fully to remedy the problem in an extremely short period of time can be seen as nothing more than human error. Indeed, the district court noted that evidence offered by plaintiffs to prove that the Election Board's actions were taken with the intent to benefit certain candidates was an insufficient basis for the entry of an injunction. It also conceded that the untimely delivery of machines might be characterized as "an error of judgment," and specifically noted in fashioning its injunction that "the evidence appears to be that in the distribution of the voting machines there was no design to affect any particular candidates' chances and the parties have not argued that de facto it had any such real effect."

Nonetheless, the district court opined that certain longstanding practices of the Elections Board—which it characterized as "foolish decisions" regarding the delegation of undue amounts of oversight responsibility to subordinates—constituted willfulness within the meaning of the civil rights law. Significantly, it further opined that "the requirement of willfulness" established by *Powell* should no longer be required because of "the passage of 25 years in the Second Circuit and a change of attitude." The district court also attempted to distinguish *Powell* and *Donohue* on the ground that voters here did not even have the opportunity to vote, whereas in those cases the issue was merely vote dilution by allowing the casting of ineligible

votes. The district court's analysis, however, is erroneous, based on a misapprehension of the law, and, as we expressed during oral argument, is a radical departure from settled principles underlying § 1983 liability in voters' rights cases.

First, there has been no change of attitude in this Circuit with respect to the holding of *Powell*. *Powell* continues to be the law of this Circuit, binding upon both the district court and us, and can only be overruled by this Court sitting *in banc* or by a decision of the Supreme Court. *See Leecan v. Lopes,* 893 F.2d 1434, 1443 (2d Cir.1990); *see also Commodity Futures Trading Comm'n v. Dunn,* 58 F.3d 50, 53–54 (2d Cir.1995) (holding that this court is bound by line of reasoning in prior decisions), *cert. granted,* —— U.S. ——, 116 S.Ct. 1846, 134 L.Ed.2d 947 (1996).

For similar reasons, the district court's reliance on *Griffin v. Burns,* 570 F.2d 1065 (1st Cir.1978), is misplaced. In *Griffin,* the First Circuit recognized the validity of our holding in *Powell,* agreeing that "local election irregularities, including even claims of official misconduct, do not usually rise to the level of constitutional violations where adequate state corrective procedures exist." *Id.* at 1077. The court went on to explain that "[i]f the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated and relief under § 1983 therefore in order," and that "there is precedent for federal relief where *broad-gauged unfairness permeates an election,* even if derived from apparently neutral action." *Id.* (emphasis added). However, the precedents cited by the First Circuit for such relief all involved intentional conduct by state actors to uneven the playing field for voters. *See id.* at 1077–1078. Significantly, the *Griffin* court distinguished *Powell* from these precedents precisely on the basis of such intentional conduct by the state actors, explaining that in the precedents cited the federal courts "were confronted with an officially-sponsored election procedure which, in its basic aspect, was flawed." *Id.* at 1078. No such officially-sponsored election procedure is at issue here, particularly one which permeated the primary with broad-gauged unfairness. Thus,

contrary to the district court's reasoning, *Griffin* supports our decision that the election irregularities at issue do not constitute constitutional violations actionable under § 1983.

Second, the district court's distinction between the opportunity to cast one's vote, at issue here, and the opportunity to have one's vote fully count, at issue in *Powell*, is analytically untenable. Both rights are constitutionally protected and neither is viewed as having more importance than the other. *See United States v. Classic*, 313 U.S. 299, 315, 61 S.Ct. 1031, 1037–38, 85 L.Ed. 1368 (1941).

Third, while the Board of Elections' long-standing decisions regarding delegation of power, and its use of a relay system of communication through several intermediaries to contact school custodians, may be "foolish," they hardly constitute the kind of official policy or custom, or the type of purposeful conduct, intended to deprive someone of the right to vote that is required to sustain a § 1983 claim under the Fourteenth Amendment.

■ Finally, New York State law provides a fair and adequate remedy for the challenged primary irregularities at issue here. Under New York Election Law § 16–102(3) (McKinney 1978), state courts are empowered to "direct ... the holding of a new primary election, or caucus where it finds there has been such fraud or irregularity as to render impossible a determination as to who rightfully was nominated or elected." The district court asserted that a new election ordered by a state court under the authority of § 16–102(3) would be "overkill" and "draconian," and that more narrowly-tailored federal relief was preferable in light of the super-adequacy of the state remedy provided. We do not subscribe to such reasoning. The remedy provided by § 16–102(3) is fair and adequate, and the district court's exercise of its jurisdiction in equity to craft a different form of relief is unwarranted.

■ We wish to emphasize that our holding today in no way disparages the constitutional right of voters to "cast their ballots and have them counted." *Classic*, 313 U.S.

at 315, 61 S.Ct. at 1037. However, despite the consequences of the irregularities which plagued the primary election at issue, we reaffirm today our holding in *Powell*, where, as here, there exists a state law remedy to the election irregularities that is fair and adequate, human error in the conduct of elections does not rise to the level of a Fourteenth Amendment constitutional violation actionable under § 1983 in the absence of willful action by state officials intended to deprive individuals of their constitutional right to vote. Short of that, human error is something we all have to live with.

Accordingly, the district court abused its discretion in holding that *Powell's* willfulness requirement should no longer be given effect, or that somehow it has evolved to cover conduct not intended by the state actor to distort outcomes or corrupt the election process. Based on our analysis above, we further conclude that the plaintiffs cannot meet the second prong required for the issuance of a preliminary injunction. As a matter of law, plaintiffs can show neither a likelihood of success on the merits, nor a sufficiently serious question going to the merits that is a fair ground for litigation, because they fail to state a claim for relief under section 1983. Consequently, the district court's preliminary injunction must be vacated in its entirety. It is unnecessary to reach the remaining claims raised by the parties.

### Conclusion

For the reasons stated above, the order of the district court directing the continuation on October 10, 1996 of the September 10, 1996 Democratic primary election for Surrogate of Kings County and certain other offices in Kings County in a number of specified election districts was reversed on October 8, 1996. The foregoing constitutes the rationale for our decision at that time. Our rationale herein equally applies to the companion decision issued in *Coto v. New York City Board of Elections*, and our decision in this case applies to, and is dispositive of, the companion cases in: *Chapland v. New York City Board*, Nos. 96–9286(L), 96–9288(XAP); *Bellazario v. Board of Elections*, Nos. 96–9282(L), 96–9294(XAP); and

*Evans v. Board of Elections,* Nos. 96–9296(L), 96–9298(XAP).

OAKES, Senior Circuit Judge, concurring:

I concur, bound as I am by the precedent of *Powell v. Power,* 436 F.2d 84 (2d Cir.1970), although the irregularities here were so gross as to call the flat statements in that precedent into serious question. However, to erode *Powell,* even in cases as fraught with irregularity as these, would put the federal courts in the extremely difficult position of monitoring state primaries as to the extent of election law violations, cases which would involve serious time constraints, difficult questions of cause and effect, and extremely complicated questions of remedy, including whether to order a reelection overall or only in certain districts, etc. Thus, though I was initially inclined to agree with District Judge Trager that the facts of these cases and the related cases went beyond the bounds of simple irregularity, on further reflection they still fall short of the intentional deprivation called for by *Powell* and progeny. Therefore, I am required, reluctantly, to concur.

I cannot help but note my view, however, that the only "abuse" of Judge Trager's discretion was his hesitance to construe our precedent as strictly as my colleagues did, and I now do. Indeed, I thought he took a very sensible, restrained, and practical approach to an almost impossible series of bureaucratic and official errors resulting in the deprivation of important, fundamental voting rights. Let us hope that a repetition of such will not again occur. Were it to do so, it would, I think, invite this court to look anew at the *Powell* approach.