**Joseph DICKIE, Plaintiff,**

v.

**John W. RABBIT, Edward S. Robertson, Catherine B. Shaughnessy, Robert M. Dever, Gloria G. Hilderbrandt, Naomi G. Foley, Walter Desharnais, Edward R. Quinn, and Gerald P. McManus, Defendants.**

**Civil Action No. 95–12741–MLW.**

United States District Court,
D. Massachusetts.

March 10, 1997.

**68**

Joseph Dickie, Woburn, MA, pro se.

Daniel R. Wojcik, Asst. City Sol., City Hall Law Dept., Lowell, MA, for John W. Rabbit.

William C. Campbell, Woburn, MA, for Catherine B. Shaughnessy, Edward R. Quinn.

Arthur C. Tourkantonis, Woburn, MA, for Robert M. Dever.

*MEMORANDUM AND ORDER ON MO-TION FOR SUMMARY JUDGMENT AND STATEMENT PURSUANT TO LOCAL RULE 56.1 BY DEFENDANTS CATHERINE B. SHAUGHNESSY AND EDWARD R. QUINN (# 12)*

COLLINGS, United States Magistrate Judge.

### I. Introduction

The instant case concerns allegations of irregularities in the 1995 election for mayor of the City of Woburn, Massachusetts. Although what is presently before the Court is the Motion for Summary Judgment and Statement Pursuant to Local Rule 56.1 by Defendants Catherine B. Shaughnessy and Edward R. Quinn (# 12), the primary issue raised by the motion is whether, taking all the facts presented in the light most favorable to the plaintiff, the plaintiff has a cause of action against any of the defendants in federal court to redress the irregularities in the election under the federal statutes which he cites.

With the parties' consent, this case has been referred to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). *See* Order of Judge Wolf, August 13, 1996.

### II. Facts

The incidents which give rise to this claim involve the mayoral election of November 7, 1995 occurring in the City of Woburn, Massachusetts. The plaintiff, Joseph Dickie, proceeding *pro se,* alleges that during this election, the defendants acted in such a manner as to violate his constitutional right to vote.

Mr. Dickie claims that tampering with voting machines occurred by the placing of stickers over mayoral candidates names and that election officers told voters for whom they should cast their ballot. Also, the voting machines had broken seals which the election officers refused to explain or document. Defendants Edward S. Robertson, Woburn City Solicitor, Catherine B. Shaughnessy, mayoral candidate, Edward R. Quinn, Campaign Manager for Catherine B. Shaughnessy, Robert M. Dever, mayoral candidate, and Walter DeSharnais are alleged to have participated in these acts. In addition to participating in these acts, defendant Gloria G. Hilderbrandt, Election Officer for the City of Woburn, is alleged to have broken the seals on ballot machines illegally. Defendants John W. Rabbit, Mayor of Woburn, and Naomi G. Foley, Woburn City Clerk in charge of all election machines and ballots, are alleged to have allowed these acts to take place. Defendant Gerald P. McManus, the individual who performed repairs on various ballot machines on the day of the election, is alleged to have repaired those machines illegally. It is claimed that he did not make a written statement as to what repairs he performed, he did not have a witness present while the repairs were performed and he did not have an election officer sign off on these repairs. All of these acts are allegedly required by state statute.

Given these allegations, the plaintiff has requested relief for the violation of his civil rights. He requests monetary compensation which is to be used to purchase new tamper-proof voting machines for use by the City of Woburn.

### III. The Asserted Legal Basis of Plaintiff's Complaint

The legal basis of plaintiff's claims seems to be shifting. In his Complaint (# 1), the

plaintiff invokes a number of statutes as providing the bases of his claims.

The first, 28 U.S.C. § 2401, is totally inapplicable since the United States is not a party. The second, 42 U.S.C. § 2000H–2, presumably refers to 42 U.S.C. § 2000h–2, which sets forth the right of the Attorney General to intervene in an equal protection case of general public importance. The third, 42 U.S.C. § 1971, is inapplicable because it deals with deprivation of the right to vote because of race, color or previous condition of servitude, a situation which is not alleged in the instant case. The fourth, 42 U.S.C. § 1972, is inapplicable because it deals with officers of the Army, Navy or Air Force prescribing the qualifications of voters, a situation which is not alleged in the instant case. The fifth, 42 U.S.C. § 1973, is inapplicable because it deals with abridgment of the right to vote on account of race or color or discrimination in voting against citizens of language minorities, a situation which is not alleged in the instant case. The sixth, 42 U.S.C. § 1973j(b), refers to misconduct "in a political subdivision in which an examiner has been appointed ...", a situation not alleged in the instant case. The seventh, 42 U.S.C. § 1973j(c), refers to rights secured by 42 U.S.C. §§ 1973, 1973b, 1973c, 1973h or 1973i(a). The first four of these statutes deal with (a) the abridgment of the right to vote on account of race, color, previous condition of servitude, or a language minority group, or (b) deal with political subdivisions and election districts as to which the Attorney General has made "determinations," or (c) deal with elections in which a poll tax is a prerequisite to voting; no allegations are made which would bring any of these statutes into play. The last statute, 42 U.S.C. § 1973i(a),[1] deals with the votes of people otherwise qualified to vote under subchapters I–A to I–C of Chapter 20. Subchapter I–A (42 U.S.C. § 1973) deals with the denial of the right to vote based on race or color by means of a voting qualification or prerequisite. Subchapter I–B (42 U.S.C. § 1973aa) deals with the prohibition against conditioning the right to vote because a prospective voter fails to comply with any "test or device" such as a literacy test. Subchapter I–C (42 U.S.C. § 1973bb) concerns the enforcement of the right of an eighteen year old to vote. Plaintiff makes no allegations in his pleadings which would render any of these statutes applicable. The Court can find no section denoted 42 U.S.C. § 1973j(n) and § 1973cc–15 was repealed in 1986.

The last statute cited in the plaintiff's Complaint is 42 U.S.C. § 1985.91 which I presume refers to 42 U.S.C. § 1985(3) which provides for a right of action for any person injured as a result of a conspiracy to deprive that person of a civil right.

In an effort to clarify the legal basis of plaintiff's claims, the Court entered a Procedural Order (# 23) which read as follows:

> Defendants Catherine B. Shaughnessy and Edward R. Quinn have moved for summary judgment on the ground that as a matter of law, in the circumstances of this case, plaintiff does not have standing to bring this suit under the Voting Rights Act of 1965. *See* Memorandum in Support of Motion for Summary Judgment by Defendants Catherine B. Shaughnessy and Edward R. Quinn (# 13, filed 4/30/96, at pp. 2–6).

> The plaintiff shall file and serve, *on or before the close of business on Friday, September 13, 1996,* a memorandum of law setting forth the legal basis upon which the plaintiff claims to have standing to pursue the claims under the Voting Rights Act which he purports to set forth in his complaint in this case.

Plaintiff responded by filing a document entitled "A Memorandum of Law Setting Forth the Legal Basis for the Cause of Action by the Plaintiff" (# 24). In that pleading, the plaintiff seems to rely on 42 U.S.C. §§ 1983, 1985, and 1986, the first and third of those statutes not having been referenced in the original complaint.

The question then arises as to whether the plaintiff has stated a cause of action under 42 U.S.C. § 1983, 1985(3) and 1986 accepting as true all allegations of the com-

---

**1.** *See Powell v. Power,* 436 F.2d 84, 86–87 (2 Cir., 1970).

plaint.[2] I find that he has not for reasons which follow.

## IV. Discussion

### A. The Prerequisites to Stating a Claim Under 42 U.S.C. §§ 1983, 1985 and 1986 For Voting Irregularities

■ "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554, 84 S.Ct. 1362, 1377–78, 12 L.Ed.2d 506 (1964). However, "the Constitution was also intended to preserve to the States the power that even the Colonies had to establish and maintain their own separate and independent governments, except insofar as the Constitution itself commands otherwise." *Oregon v. Mitchell*, 400 U.S. 112, 124, 91 S.Ct. 260, 265, 27 L.Ed.2d 272 (1970). Therefore, courts have held that the conduct of state elections should be left to the states. *Id.* at 124–29, 91 S.Ct. at 264–67.

■ Applying these principles, federal courts have attempted to determine in what circumstances claims regarding voting in elections are cognizable under the civil rights acts. "Circuit courts have uniformly declined to endorse action under § 1983 with respect to garden variety election irregularities." *Griffin v. Burns*, 570 F.2d 1065, 1076 (1 Cir., 1977). But

> [i]f the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated and relief under § 1983 therefore in order.

*Griffin*, 570 F.2d at 1077.

However, the Court acknowledged that "there is no single bright line." *Id.* at 1078.

The Second Circuit has ruled that:

> ... plaintiffs who can establish nothing more than "unintended irregularities" in the conduct of elections are barred from

obtaining § 1983 relief in federal court, provided an adequate and fair state remedy exists.

*Gold v. Feinberg*, 101 F.3d 796, 800 (2 Cir., 1996) citing *Powell v. Power*, 436 F.2d 84, 85–88 (2 Cir., 1970).

Rather, to state a claim under § 1983, plaintiffs must allege "willful action by state officials intended to deprive individuals of their constitutional right to vote." *Gold*, 101 F.3d at 802.[3]

In *Griffin*, the First Circuit determined that there existed a fundamental unfairness in a local Rhode Island Democratic primary for a vacant city council seat where the Secretary of State issued absentee ballots which the state retroactively invalidated. *Griffin*, 570 F.2d at 1078. The state had determined that the statute pertaining to absentee ballots did not apply to primary elections thus invalidating those votes obtained through absentee ballots. *Id.* at 1078–9. Therefore, those individuals who trusted the issuance of the absentee ballots were constructively denied their right to vote. The court determined that this was "one of the perhaps exceptional cases where a district court could properly exercise the limited supervisory role that such courts have in election cases", *Griffin*, 570 F.2d at 1079, and upheld the lower court's decision to order a new primary.

The First Circuit distinguished cases such as *Powell* dealing with election irregularities, writing that in cases in which federal courts did intervene, such as *Ury v. Santee*, 303 F.Supp. 119 (N.D.Ill., 1969) and *Briscoe v. Kusper*, 435 F.2d 1046 (7 Cir., 1970),

> ... it is apparent that in both cases that attack was, broadly, upon the fairness of the official terms and procedures under which the election was conducted. The federal courts were not asked to count and validate ballots and enter in the details of the administration of the election. Rather they were confronted with an officially-

---

**2.** The allegations of a *pro se* complaint are held to "less stringent standards than formal pleadings drafted by a lawyer." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

**3.** "Both [the right to cast one's vote and the right to have one's vote fully count] are constitutionally protected, and neither is viewed as having more importance than the other." *Gold*, 101 F.3d at 802 citing *United States v. Classic*, 313 U.S. 299, 315, 61 S.Ct. 1031, 1037–38, 85 L.Ed. 1368 (1941).

sponsored election procedure which, in its basic aspect was flawed.

*Griffin,* 570 F.2d at 1078.

In the *Gold* case, the Second Circuit distinguished *Griffin* on this ground noting that "... the precedents cited by the First Circuit ... all involved intentional conduct by state actors to uneven the playing field for voters." *Gold,* 101 F.3d at 801 citing *Griffin,* 570 F.2d at 1077–8.

■ On the other hand, in situations involving allegations of election irregularities, courts have consistently refused to act under § 1983:

> If every state election irregularity were considered a federal constitutional deprivation, federal courts would adjudicate every state election dispute, and the elaborate state election contest procedures, designed to assure speedy and orderly disposition of multitudinous questions that may arise in the electoral process, would be superseded by a section 1983 gloss.

*Gamza v. Aguirre,* 619 F.2d 449, 453 (5 Cir., 1980).

Without the presence of willful or intentional conduct of governmental officials which undermines the voting process, an election irregularity will not rise to the level of a constitutional claim.

> [W]here there exists ... a state law remedy to the election irregularities that is fair and adequate, human error in the conduct of elections does not give rise to the level of a Fourteenth Amendment constitutional violation actionable under § 1983 in the absence of willful action by state officials intended to deprive individuals of their constitutional right to vote.

*Gold,* 101 F.3d at 802 upholding *Powell v. Power,* 436 F.2d 84 (2 Cir., 1970).

Examples of election irregularities which have not given rise to constitutional claims include: late arrival of voting machines along with the failure to remove a candidate's name from seventy-five percent of the voting machines, *Gold,* 101 F.3d at 802; irregularities in management and programming of the voting machines and ballots, *Gamza,* 619 F.2d at 453; malfunctioning of electronic voting devices, *Hennings v. Grafton,* 523 F.2d 861, 864 (7 Cir., 1975); irregularities in the handling of absentee ballots, *Pettengill v. Putnam County R–1 School District,* 472 F.2d 121, 122 (8 Cir., 1973); and, inadvertent tallying of ballots cast by unauthorized voters, *Powell,* 436 F.2d at 86.

■ The present case involves allegations of tampering with voting machines by the placing of stickers over mayoral candidates names. The stickers are alleged to display the name of another mayoral candidate running in the election who is also named as a defendant in this action, Catherine B. Shaughnessy. Ms. Shaughnessy was a sticker candidate which required voters to use stickers displaying her name in order to cast a ballot in her favor. These stickers were found affixed to different parts of the voting machines during the election in question. The plaintiff seems to be alleging that the defendants are responsible for these incidents or that the defendants should be held responsible for not correcting the confusion at the time of the election. However, there is no allegation that these stickers were intentionally placed over candidates' names by state officials to subvert the rights of the City of Woburn voters to choose their mayor. The defendants do not dispute that these stickers were appearing on the voting machines throughout the evening of the election and that those individuals running the election were having trouble keeping up with the misplacement of these stickers.

Furthermore, the plaintiff alleges that many of the voting machines were broken and that the election officers in charge of these machines did not follow statutory requirements which dictate how these machines were to be serviced. The defendants do not dispute that some voting machines had broken seals and some were not working properly. This does not give rise to a genuine issue of material fact that the defendants were willfully breaking voting machines or purposefully allowing voters to use broken machines in order to deprive the voters of Woburn of their right to vote in the election.

■ Lastly, the plaintiff alleges that election officers told some of the voters for whom they should cast their ballot. There is no

allegation that the election officers coerced or threatened anyone or that any voter was deprived of their right to vote. Rather, taking the materials presented in the light most favorable to the plaintiff, it seems that the combination of the confusion surrounding what voters should do with the stickers and the seeming prevalence of broken voting machines caused some miscommunication between those who were attempting to run the election and those who were present to cast their votes. As the Seventh Circuit noted in the *Hennings* case:

> Except for the overall supervision of the county clerk, or his counterpart, and appointed subordinates, the work of conducting elections in our society is typically carried on by volunteers and recruits for whom it is at most an avocation and whose experience and intelligence vary widely. Given these conditions, errors and irregularities ... are inevitable, and no constitutional guarantee exists to remedy them.

*Hennings,* 523 F.2d at 865.

The Second Circuit expressed the same sentiment in the *Powell* case, writing that:

> we cannot believe that the framers of our Constitution were so hypersensitive to ordinary human frailties as to lay down an unrealistic requirement that elections be free of any error.

*Powell,* 436 F.2d at 88.

Although there may have been irregularities in the election of mayor for the City of Woburn on November 7, 1995, these irregularities do not constitute official custom or policy, or purposeful or willful conduct which was intended to deprive the voters of Woburn of their right to vote. It is important to note that "purposeful deprivation of the right to vote will not be assumed merely because there is evidence that election officials acted incompetently or negligently ..." *Donohue v. Board of Elections,* 435 F.Supp. 957, 966 (E.D.N.Y., 1976) quoted with approval in *Gold,* 101 F.3d at 800–1.

### B. The Adequacy of State Remedies in Massachusetts

As discussed above, state election laws should be relied upon to provide the proper remedy in circumstances such as the present where the plaintiff is alleging irregularities in the election process. *See Gold,* 101 F.3d at 802; *Griffin,* 570 F.2d at 1077; *Hennings,* 523 F.2d at 861.

Massachusetts has statutes and regulations which are adequate remedies to address election irregularities. Massachusetts General Laws, chapter 56 addresses violations of election laws; section 60 therein sets out remedies for conduct contrary to the election laws, allowing the state secretary to order a local official to comply with the law while the attorney general may enforce such an order by civil action. Moreover, normal judicial remedies are available to any person, official, board or commission. *See* Mass.Gen.Laws ch. 56, § 58. Furthermore, chapter 56 of Title 950 of the Code of Massachusetts Regulations describes the administrative proceedings concerning practices of local election officials. This description explains that "any person may complain to the Secretary that a pattern of conduct, or a standard, practice or procedure, of a local official is contrary to the election laws." Mass Regs.Code tit. 950 § 56.02 (1993). The complaint must be made in writing to the office of the Secretary of State who will then investigate the issue and reach a decision. This may also include the holding of an adjudicatory hearing.

These state procedures afford the plaintiff fair and adequate remedies for the conduct alleged in his complaint. Availing himself of these procedures would furnish him with the opportunity to address the alleged voting irregularities which occurred during the Woburn mayoral election on November 7, 1995.

### V. Conclusion and Order

Although the present summary judgment motion was advanced by only two of the named defendants, Catherine B. Shaughnessy and Edward R. Quinn, the issues and facts are relevant to all of the named defendants. Therefore, for all the reasons stated, it is ORDERED that the Motion of Catherine B. Shaughnessy and Edward R. Quinn pursuant to Rule 56, Fed.R.Civ.P. for Summary Judgment (# 12) be, and the same hereby is,

ALLOWED. When the time is ripe,[4] summary judgment shall enter in favor of all defendants on plaintiff's claims against them.

4. Defendants Catherine B. Shaughnessy and Edward R. Quinn have asserted counterclaims against the plaintiff.