**William M. HOBLOCK, candidate for Albany County Legislator for the 26th District, Lee R. Carman, candidate for Albany County Legislator for the 29th District, Philip and Patricia Sgarlata, John and Carol Stewart, John and Mary Maybee, Ellen Graziano, and other voters similarly situated, Plaintiffs,**

v.

**THE ALBANY COUNTY BOARD OF ELECTIONS, Richard A. Gross, candidate for Albany County Legislator for the 26th District, and Gene Messercola, candidate for Albany County Legislator for the 29th District, Defendants.**

No. 1:04CV1205 (LEK/DRH).

United States District Court, N.D. New York.

Oct. 25, 2004.

Paul Derohannesian, II, Thomas Marcelle, Albany, NY, Plaintiffs.

### *MEMORANDUM–DECISION AND ORDER* [1]

KAHN, District Judge.

### I. Background

Plaintiffs William M. Hoblock, candidate for Albany County Legislator for the 26th District, and Lee R. Carman, candidate for Albany County Legislator for the 29th District, and seven named voters representing other voters similarly situated, brought this action pursuant to 42 U.S.C. § 1983, alleging a violation of their Fourteenth Amendment rights by Defendant Albany County Board of Elections' ("Board") refusal to tally their absentee ballots. Plaintiffs are moving for a preliminary injunction to prevent the Board from tallying the ballots and certifying the winners of the elections without including the contested absentee ballots.

The November 4, 2003 elections for members of the Albany County Legislature were enjoined by the District Court because the legislative districts violated the voting rights of the minority population. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 281 F.Supp.2d 436 (N.D.N.Y.2003) (Mordue, J.). Pursuant to the Second Circuit's decision in *Arbor Hill Concerned Citizens v. County of Albany*, 357 F.3d 260 (2d Cir.2004), which ordered a special primary and general election, on remand the District Court outlined the procedures to be used in those elections. The District Court's order required the Board, *inter alia*, to send absentee ballots for the special *primary* election to any voter who had filed an application for an absentee ballot for either the 2003 primary or general election. The order also stated that the process for obtaining and counting absentee ballots for the special *general* election would be in accordance with Article 8 of the New York Election Law. However, Article 8 requires a voter to file an application requesting an absentee ballot to qualify to cast an absentee vote. In a bipartisan decision, the Board interpreted the

1. For printed publication in the Federal Reporter.

District Court's order to allow it to issue absentee ballots for the special *general* election to all voters who had filed an application for an absentee ballot for the cancelled November 4, 2003 election. There was no objection to this decision until *after* the special general election on April 27, 2004.

Twenty-seven voters, including the seven named Plaintiff voters in this case, were issued absentee ballots by the Board, which they used to vote in the April 2004 election and which were subsequently invalidated.[2] Each absentee ballot requires that the voter reaffirm that he or she continues to be qualified to vote in the district by absentee ballot.

The elections in the 26th and 29th County Legislative Districts were very close; without tallying the disputed ballots, fewer than 5 votes separated the candidates in each contest. On May 5, 2004, the Board convened to count the absentee and paper ballots, in the presence of counsel for the four candidates. Counsel for the candidates objected to various absentee ballots (including the 27 at issue in this action), and the Board agreed not to open the absentee ballots until the state court could rule on them. The candidates then filed cross-motions in the New York State Supreme Court. The Plaintiff voters were not a party to that action. The Supreme Court, while noting that there was no allegation of fraud or intentional misconduct, ruled that the Board's actions resulted from a misinterpretation of the District Court's order, and therefore the absentee ballots at issue were not in compliance and should not be tallied. The Appellate Division and the New York Court of Appeals affirmed the decision. The Court of Appeals (also noting the lack of fraud or intentional misconduct) determined that the District Court order required compliance with Article 8 of New York State election law, and that automatically sending absentee ballots to those who had not filed a separate application for the April 27, 2004 special general election was in violation of Article 8. The Court of Appeals did not address any federal constitutional issues in its opinion.

The Plaintiffs filed this action on October 19, 2004, alleging that by not tallying the absentee ballots, the Board has violated the Plaintiffs' Fourteenth Amendment rights of Due Process and Equal Protection. Because the Board was prepared to certify a winner and destroy the absentee ballots without tallying them at 10:00 AM on Wednesday, October 20, 2004, Plaintiffs simultaneously filed a motion for a temporary restraining order ("T.R.O.") and preliminary injunction. The Court granted the request for a T.R.O., prohibiting destruction of the ballots and certification of the winners, until the time when a hearing could be held on the request for a preliminary injunction. In their motion for a preliminary injunction, Plaintiffs seek to enjoin the Board from tallying any ballots or certifying any winner in the elections for Albany County Legislator for the 26th and 29th Districts, pending a judgment by this Court.

## II. Discussion

### A. Subject Matter Jurisdiction

Although Defendants do not raise this issue, the Court must first determine whether it has subject matter jurisdiction over the claims in this action. The *Rooker–Feldman* doctrine holds that lower federal courts "lack subject matter juris-

---

**2.** Although Plaintiffs assert that there are only 27 absentee ballots at issue, Defendants claim that there are actually 40 absentee ballots that were invalidated by the New York State Court of Appeals.

diction 'over cases that effectively seek review of judgments of state courts and that federal review, if any, can occur only by way of certiorari petition to the Supreme Court.'" *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir.2002) (citing *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir.1996)). In *Rooker*, the Supreme Court held that "no federal court, other than the Supreme Court, can consider a claim to reverse or modify a state court judgment." *Phifer*, 289 F.3d at 55 (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923)). Further, if a plaintiff's claims are "'inextricably intertwined' with the state court's determination, the district court [does] not have jurisdiction to entertain those claims." *Phifer*, 289 F.3d at 55 (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)).

The Second Circuit has instructed that the *Rooker–Feldman* doctrine does not bar claims that "were never presented in the state court proceedings" and in which "the plaintiff did not have an opportunity to present the claims in those proceedings." *Phifer*, 289 F.3d at 55–56 (citing *Moccio*, 95 F.3d at 198–99). The Second Circuit explained in *Moccio* that "inextricably intertwined" means that "where a federal plaintiff had an opportunity to litigate a claim in a state proceeding, ... subsequent litigation will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Phifer*, 289 F.3d at 56 (citing *Moccio*, 95 F.3d at 199–200). Therefore, two categories of preclusion, collateral estoppel and res judicata, must be considered. *Phifer*, 289 F.3d at 56.

■ Collateral estoppel only applies if "'(1) the issue in question was actually and necessarily decided in a prior proceeding,

and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.'" *Phifer*, 289 F.3d at 56 (citing *Moccio*, 95 F.3d at 200). The first requirement for the application of collateral estoppel is not satisfied. The issue of whether the invalidation of the absentee ballots would violate the Fourteenth Amendment was not addressed by the Court of Appeals. Further, the Plaintiff voters clearly did not have a full and fair opportunity to litigate any issue in the state court proceeding as they were not parties to that action. Therefore, collateral estoppel would not act as a bar to Plaintiffs in this case.

■ Res judicata bars "parties and their privies from relitigating issues that were or could have been raised in that action." *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 380 (2d Cir.2003) (citations omitted). Defendants assert that the rights of the voters were fully addressed in the action before the Court of Appeals. However, the Plaintiff voters were not parties to the action, nor were they privies. Though the candidates, who were parties in the state action, have an interest in having the absentee ballots counted, that interest is insufficient to create privity. "Candidates' rights, though related to voters' rights, are said to be distinct from them." *Griffin v. Burns*, 570 F.2d 1065, 1072 (1st Cir.1978) (citing *Bullock v. Carter*, 405 U.S. 134, 142–43, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972)). Because they were not parties nor in privity to any party in the state court action, res judicata cannot apply to bar the Plaintiff voters' § 1983 action. Therefore, this Court has subject matter jurisdiction over the cause of action by the Plaintiff voters.

■ The Plaintiff candidates, however, were parties to the state court action, and they are asserting claims here that they

could have asserted in state court. Further, the Plaintiff candidates' federal cause of action arises from the Board's refusal to count the absentee ballots, which is the same factual basis underlying the state court proceedings. Therefore, the federal cause of action arises from the same transaction or series of transactions at issue in the state court proceedings, which causes it to be barred by res judicata. *See, e.g., Cieszkowska v. Gray Line New York*, 295 F.3d 204, 205 (2d Cir.2002) ("[e]ven claims based upon different legal theories are barred provided they arise from the same transaction or occurrence").

Finally, the Plaintiff candidates contend that because they reserved their federal rights in the state court proceeding, that *Rooker–Feldman* should not apply, citing *England v. La. State Bd. of Med. Exam'rs,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). In *England,* the Supreme Court allowed plaintiffs to reserve their federal claims in a state court action and avoid preclusion when the federal court abstained pursuant to *R.R. Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). However, the Second Circuit has limited the holding of *England* to *Pullman* abstention cases. *See, e.g., Temple of Lost Sheep, Inc. v. Abrams,* 930 F.2d 178, 182 (2d Cir.1991). In *Temple of Lost Sheep,* the Second Circuit reasoned that the decision in *England* "is a direct result of the purposes behind *Pullman* abstention" which is merely to *postpone* jurisdiction when the federal claim is brought to federal court *in the first instance. Id.* (citing *Allen v. McCurry,* 449 U.S. 90, 101–02, 101 S.Ct. 411, 66 L.Ed.2d

308 (1980)). The purposes behind *Pullman* abstention are not present in this case, and therefore *England* is inapposite.

Therefore, the action against Defendants by Plaintiff candidates Hoblock and Carman is dismissed for lack of subject matter jurisdiction.[3] Any claims they may have must be addressed directly to the United States Supreme Court, pursuant to 28 U.S.C. § 1257. *Phifer,* 289 F.3d at 55 (citing *Moccio,* 95 F.3d at 197).

■ Plaintiff candidates, in the alternative, requested that they be joined in this litigation under Rule 19 or be permitted to intervene under Rule 24 of the Federal Rules of Civil Procedure. Rule 19(a) governs joinder:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a). Rule 19(a), therefore, only applies if a party can be joined without destroying the subject matter jurisdiction of the court. As the Court does not

---

**3.** Plaintiff candidates have asserted that the *Rooker–Feldman* doctrine should not apply to bar their claims in this Court, noting the Third Circuit's decision to not bar the plaintiff candidates' claims following a state court action in *Marks v. Stinson,* 19 F.3d 873, 885 (3d Cir.1994). However, in *Marks,* the state court

proceeding was dismissed before a decision on the merits was reached because the voters did not post a bond to proceed in state court. *Marks,* 19 F.3d at 885. In this case, the Court of Appeals ruled on the merits of the Plaintiff candidates' claim, making *Marks* inapplicable to this case.

have subject matter jurisdiction over the Plaintiff candidates' pleaded action for the reasons stated above, Rule 19(a) does not apply.

Under Rule 19(b), however, "where joinder of a party would destroy subject matter jurisdiction, the court must dismiss the action if that party is 'indispensable' to the litigation." *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 445–46 (2d Cir.1995) (citing *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 548 (2d Cir.1991)). But, "if a party does not qualify as necessary under Rule 19(a), then the court need not determine whether its absence warrants dismissal under Rule 19(b)." *Medina v. Bauer*, 2004 WL 136636 at *5 (S.D.N.Y. Jan.27, 2004) (citations omitted). Complete relief under Rule 19(a)(1) only refers to relief between those already parties to the suit; it does not refer to relief for the person sought to be joined. *Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir.1985). This Court is able to provide Plaintiff voters with complete relief (namely, ordering the Board to count the absentee votes) even if Plaintiff candidates are not joined as parties. Further, under Rule 19(a)(2)(i), if Plaintiff candidates are not parties, that will not impair or impede their ability to protect their interests. The avenue of relief open to the Plaintiff candidates, petitioning the Supreme Court for certiorari, is not hampered in any way by not being joined as a party in this litigation. They are still fully able to obtain relief. Finally, there is no substantial risk of "double, multiple, or otherwise inconsistent obligations." The only possible inconsistent obligation would be if the Supreme Court ordered the Board to count the ballots in the Plaintiff candidates' case while this Court ordered that the Board not count those ballots. However, should the Supreme Court disagree with this Court about the application of the Four-

teenth Amendment to these facts, the decision of the Supreme Court would be controlling. Therefore, Rule 19(b) does not require that this case be dismissed.

Alternatively, Plaintiff candidates request permission to intervene. Pursuant to Rule 24(c), "a person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5." Therefore, should Plaintiff candidates wish to intervene, they must file a motion as required under Rule 24.

### B. Preliminary Injunction

#### 1. Standard

The Court may grant preliminary injunctive relief when the moving party has demonstrated: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 70 (2d Cir.1996) (citations omitted); *see Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir.1997). However, when a party seeks to enjoin government action, a movant must satisfy the more rigorous standard of likelihood of success on the merits. *No Spray Coalition v. City of New York*, 252 F.3d 148, 150 (2d Cir.2001).

#### a. Irreparable Harm

An irreparable harm is a harm for which "a monetary award cannot be adequate." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (citing *Studebaker Corp. v. Gittlin*, 360 F.2d 692, 698 (2d Cir.1966); *Foundry Servs., Inc. v. Beneflux Corp.*, 206 F.2d 214, 216 (2d Cir. 1953)). The Second Circuit has noted that "when an alleged deprivation of a constitu-

tional right is involved, ... no further showing of irreparable injury is necessary." *Mitchell v. Cuomo,* 748 F.2d 804, 806 (2d Cir.1984). Specifically, certifying an election when all votes are not counted is a harm that "cannot be recompensed." *Shannon v. Jacobowitz,* 301 F.Supp.2d 249, 258 (N.D.N.Y.2003) (Hurd, J.).

■ In this case, Plaintiffs allege, and Defendants do not deny, that the Board intends to certify a winner without tallying all of the ballots and then to destroy the absentee ballots. These actions clearly implicate the Plaintiff voters' fundamental right to vote guaranteed by the Constitution. Money cannot compensate these Plaintiffs for the harm of being shut out of the political process, and therefore they have met the requirement of showing irreparable harm.

### b. Likelihood of Success on the Merits

The right to vote is the most sacrosanct of the many rights we have as citizens in a democratic society. The Supreme Court has recognized that voting is a fundamental right guaranteed by the Due Process Clause of the Fourteenth Amendment. *United States v. Classic,* 313 U.S. 299, 315, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). Further, "[t]he right to vote is protected in more than the initial allocation of the franchise." *Bush v. Gore,* 531 U.S. 98, 104, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000). It is a basic assumption of a democracy that all votes are counted. The right to vote would be empty indeed if the right to have one's vote tallied was not included. The Supreme Court has stated that it is "as equally unquestionable that the right to have one's vote counted is as open to protection ... as the right to put a ballot in a box." *United States v. Mosley,* 238 U.S. 383, 386, 35 S.Ct. 904, 59 L.Ed. 1355 (1915); *see also Gold v. Feinberg,* 101 F.3d 796, 802 (2d Cir.1996).

The Board asserts that Plaintiff voters do not have a constitutional right to vote by absentee ballot, but merely have a statutory right. However, by providing absentee ballots that voters rely upon in good faith to cast their vote, and then invalidating them, the Board has effectively taken away their guaranteed right to vote in the election. *Griffin,* 570 F.2d at 1074.

■ Although the Board is correct in its assertion that a § 1983 action cannot be sustained where mere "unintended irregularities" in the conduct of elections occur, *Gold,* 101 F.3d at 801; *see also Powell v. Power,* 436 F.2d 84 (2d Cir.1970), the elections at issue in this case were marred by more than "unintended irregularities." *Gold* involved the unintentional failure to remove a candidate's name from the ballot and the late arrival of some voting machines due to miscommunications and insufficient time before the election. *Gold,* 101 F.3d at 798–99. The Second Circuit held that the election problems in *Gold* were the type of irregularity that required allegations of wrongful intent to show likelihood of success on the merits in a § 1983 action. *Id.* at 801. The Second Circuit in *Gold* distinguished the First Circuit's decision in *Griffin.* However, the facts of *Griffin* are strikingly similar to those in this case. In *Griffin,* the Rhode Island Supreme Court had held that, because there was no constitutional or statutory basis for allowing absentee or shut-in ballots for primary elections, the 123 ballots issued by election officials and submitted by voters were to be invalidated. *Griffin,* 570 F.2d at 1069. The First Circuit, though, in a § 1983 action challenging that decision, affirmed the District Court's ruling that the right to vote was "denied when these qualified electors lost their franchise in the fashion described, after having voted in reliance on absentee and shut-in ballot procedures announced by

state officials." *Id.* The Second Circuit in *Gold* distinguished *Griffin*, concluding in *Gold* that there was "no such officially-sponsored election procedure here, particularly one which permeated the primary with broad-gauged unfairness." *Gold*, 101 F.3d at 802. However, that same conclusion cannot be drawn based upon the situation at issue in this case. Like *Griffin*, this case involves the intentional decision by the Board to send out absentee ballots to voters and then to refuse to tally those ballots. This is clearly an "officially-sponsored election procedure," and not just an "unintended irregularity," which, as it did in *Griffin*, should lead to the conclusion that the election was permeated with unfairness.[4]

The unfairness to the Plaintiff voters is unmistakably clear, and just as troublesome as that in *Griffin*. The voters in this case applied for absentee ballots for the original November 2003 election. Thereafter, in preparation for the April 2004 special general election, each Plaintiff voter received an absentee ballot from the Board. They reasonably relied upon the actions of the Board's election experts in sending them absentee ballots for the special general election. The good faith of the voters in submitting the absentee ballots is undisputed. It would be absurd to make it the responsibility of the voters to reject the ballot sent by the Board because of the Board's error in interpreting the District Court's order, and then to demand an application for a new absentee ballot. Even

if this procedure was required, it is not clear that it even could have been accomplished in the time period between the sending of the absentee ballots and the April 2004 election, since the special primary was not held until March 2, 2004.

Further, the contests in the 26th and 29th Districts are extremely close; the difference between the opposing candidates without the tallying of the absentee ballots is fewer than 5 votes. Therefore, the votes cast by these 27 voters will determine who will represent them in the Albany County Legislature. Not tallying these votes, cast in reliance upon the Board's issuance of the absentee ballots, clearly rises to the level of "patent and fundamental unfairness." *Gold*, 101 F.3d at 801 (citing *Griffin*, 570 F.2d at 1077). Although under *Powell*, the Second Circuit may require plaintiffs to show willful or intentional constitutional violations to sustain a § 1983 action for mere election irregularities, this case involves a far greater disruption to the political process. Therefore, because of the pervasive and fundamental unfairness in the election resulting from the Board's actions and the Court of Appeals' decision, the Plaintiff voters have showed a likelihood of success on the merits.[5]

▮ While it is necessary for states to have regulations surrounding the issuance of absentee ballots to avoid election fraud, adherence to those regulations cannot trump the fundamental right to vote and to

---

4. Plaintiffs cite to *Duncan v. Poythress*, 657 F.2d 691, 703 (5th Cir.1981) in support of their claims. However, in *Duncan*, the issue was that there was no election held at all, which is substantially different from the case at hand.

5. The Board points out that in *Griffin*, the voters filed an application for that particular election while in this case, the voters filed an application for the November 2003 election and not the special general election. This,

however, is an insufficient basis upon which to justify distinguishing *Griffin* from the case at hand. Whether or not the voters filed an application for the specific election, in the absence of allegations of fraud, both elections were fundamentally unfair to the voters. It is the unfairness resulting from the refusal to count absentee ballots, not the particular state electoral procedure violated, that is relevant to the violation of the voters' Fourteenth Amendment rights.

have one's vote counted as guaranteed by the United States Constitution. Defendants assert that because Plaintiff voters did not file new absentee ballot applications, there is no confirmation that they were qualified to vote by absentee ballot on April 27, 2004. The Court of Appeals noted, and the parties confirm, that there is no fraud or intentional misconduct at issue in this case. No party contends that these voters were not qualified to vote on the day of the special general election. There is no suggestion that any voter moved, for example, or became ineligible to vote in any way in this election. There is no argument that the voters' use of the absentee ballots was in any way tainted by fraud, or that the voters' reaffirmations that they were unable to vote at a polling place on the day of the election were falsely made. No party offers any evidence that any absentee voter was actually ineligible to vote by absentee ballot. Most importantly, it must be emphasized that there were no challenges to the absentee ballots until after the rest of the votes were tallied, and the two Defendant candidates realized that they would be certified as the winners, and the two Plaintiff candidates would be the losers, if the absentee ballots were not counted. Because until then, of course, each candidate wants every vote to count. However, candidates should be as concerned with the integrity of the political process as they are with securing an electoral victory. The only reason these ballots are in dispute is because of a technicality, entirely the fault of the Board. The right to vote is the heart of our democratic society; it is too essential to permit a mere technicality to strip innocent citizens of their right to vote for the government by whose laws they must live.

## III. Conclusion

Based on the foregoing discussion, it is hereby

ORDERED, that the claims asserted by Plaintiffs William M. Hoblock and Lee R. Carman are DISMISSED; and it is further

ORDERED, that the request of Plaintiffs Hoblock and Carman to be joined under Rule 19 is DENIED; and it is further

ORDERED, that the request of Plaintiffs Hoblock and Carman to intervene under Rule 24 is DENIED without prejudice to file a motion to intervene; and it is further

ORDERED, that Plaintiffs' motion for a preliminary injunction to enjoin Defendant Board of Elections from tallying the ballots or certifying a winner in the 26th and 29th District elections is GRANTED; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties.